ON REHEARING
This Court's original opinion was released August 30, 1991. On October 2, 1991, the Court granted the State's application for rehearing, and the case was orally argued on November 12, 1991. The original opinion is withdrawn and the following is substituted therefor.
At the outset, we note that the facts of this case present a very close case. We granted rehearing so as to again review the facts and the applicable law.
Charles Carpenter was indicted by the Baldwin County grand jury for the offense of possession of a controlled substance, in violation of § 13A-12-212, Ala. Code 1975. Carpenter filed a motion to suppress the evidence, arguing that it had been illegally seized. After a hearing on the motion to suppress, the trial court granted the motion.
The Court of Criminal Appeals reversed the trial court's order suppressing the evidence. This Court granted certiorari review in order to determine whether the record supported the Court of Criminal Appeals' reversal of the trial court's order.
At the hearing on the motion to suppress, Steve Griffis, a police officer with the City of Fairhope, Alabama, testified that he received a telephone call from a reliable informant who told him that Carpenter would be driving up South Mobile Avenue in Fairhope in his own automobile and that he would be in possession of a firearm and drugs. Officer Griffis testified that before the arrest, he knew Carpenter and that he knew what type of car Carpenter drove. He further stated that the identity of the informant was known to him and that the informant was reliable.
Officer Griffis proceeded to South Mobile Avenue, where he saw Carpenter exiting a residential driveway in his own automobile. Griffis followed Carpenter for a brief period and then stopped him. Griffis approached the car and asked Carpenter for his driver's license. Griffis then directed Carpenter and a passenger to get out of the car and to stand behind it. Griffis saw a pistol protruding from a zippered carrying case on the floorboard of the driver's side. After discovering the pistol, Griffis searched the car. He found what he believed were controlled substances inside the covering of the gearshift box. Griffis then arrested Carpenter for the offense of carrying a weapon without a permit and transported him to the Fairhope police station. It was later confirmed that the drugs found by the police were one Valium pill and one methamphetamine.
At the hearing on the motion to suppress the evidence, Officer Griffis testified on cross-examination as follows:
 "Q. All right. What type of drugs did the informant tell you that Mr. Carpenter had?
"A. I didn't ask him.
 "Q. Where did the informant tell you the drugs were located in the vehicle?
"A. He didn't know. I didn't ask him that either.
 "Q. All right. How did the informant — on what basis did the informant tell you that he knew that there were guns and drugs in the vehicle?
". . . .
"A. I didn't ask him.
 "Q. All right. So you did not inquire with the informant as to what drugs or weapon, where they were *Page 629 
located, or how that person knew that there may have been drugs and/or weapons in the vehicle.
"A. I did not.
 "Q. Okay. You have said on one occasion in the past this person's provided you information in fifty prior convictions. And you have now said that the last hearing — in this hearing you have said there were twenty. So the person has provided you information which has led to the arrest and conviction of twenty people?
 "A. I said could be more than twenty. It could be as many as fifty. I said 'more than twenty,' and I believe I've said that in three hearings.
"Q. All right.
"A. We have had several hearings in this case.
 "Q. We have. Isn't it normal police practice when you receive information to question or find out about the reliability or the veracity of that information?
 "A. If you don't have a reliable informant. This informant, if he tells me something is in there, it's like money in the bank. It's there.
 "Q. All right. But this informant did not tell you that the informant himself had seen any drugs in the vehicle?
"A. I did not ask him.
 "Q. All right. Whether you asked him or not, you didn't get this information. So as far as you know, the informant did not have any personal information of what he was telling you?
 "A. As far as I knew, it was personal information or he wouldn't be telling me.
"Q. He did not say that to you?
"A. I did not ask him.
 "Q. All right. You had no way — based on what he told you, whether he had any personal knowledge of what may have been in the vehicle or that he was just passing along street talk, or whether he simply had a grievance against Mr. Carpenter?
"A. This informant doesn't pass along street talk.
"Q. He didn't tell you any of that, did he?
"A. I didn't ask him."
Carpenter argues that the police had no reasonable and articulable basis to warrant stopping his car. Carpenter further argues that Officer Griffis was not justified in making a "protective" search of the car for weapons and, furthermore, that he had no probable cause to search the car.
The first question that this Court must answer is whether there was a "reasonable suspicion," based on the informant's tip, to justify stopping Carpenter's car.
The United States Supreme Court in Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that "a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880. The standard for allowing a Terry stop is whether there is a reasonable suspicion that "the person being stopped has engaged in some type of criminal activity." Webb v. State,500 So.2d 1280, 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282
(Ala. 1986).
In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921,32 L.Ed.2d 612 (1972), the Supreme Court addressed the question of whether an informant's tip created a reasonable suspicion to justify aTerry stop. In that case, an informant known to the police officer told him that an individual in a nearby automobile was carrying drugs and had a gun at his waist. The officer approached the car and asked the defendant to open his door. The defendant rolled down the window, and the officer reached inside and found a gun at the defendant's waist. The defendant was arrested and searched pursuant to the arrest. Drugs were found on the defendant and in the car. The Supreme Court noted that the *Page 630 
informant's unverified tip may have been insufficient for a narcotics arrest or for a search warrant under Aguilar v.Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), andSpinelli v. United States, 393 U.S. 410, 89 S.Ct. 584,21 L.Ed.2d 637 (1969), but held further that the tip from an informant known to the police officer "carried enough indicia of reliability to justify the officer's forcible stop of [the defendant]." Adams v. Williams, 407 U.S. at 147,92 S.Ct. at 1924.
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983), the Supreme Court abandoned the rigid two-pronged test of Aguilar and Spinelli, in favor of a "totality of the circumstances" approach in determining whether an informant's tip creates probable cause. Under Aguilar andSpinelli, the prosecution had to prove the informant's "veracity" or "reliability" and the informant's "basis of knowledge." Under the totality-of-the-circumstances approach, the informant's "veracity" and "reliability" and his "basis of knowledge" are all relevant factors in determining whether probable cause exists. However, "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other [factors], or by some other indicia of reliability." Illinois v. Gates,462 U.S. at 233, 103 S.Ct. at 2329.
 "The Fourth Amendment requires 'some minimal level of objective justification' for making the [Terry] stop. INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), and the level of suspicion required for a Terry
stop is obviously less demanding than that for probable cause. See United States v. Montoya de Hernadez, 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 3312, 87 L.Ed.2d 381 (1985)."
United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581,104 L.Ed.2d 1 (1989).
Most recently, the Supreme Court has held that ananonymous telephone tip, corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make a Terry stop. Alabama v. White,496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). InAlabama v. White, an unknown informant told police that the defendant would be leaving a specific apartment building at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to a certain motel, and that she would be in possession of cocaine inside a brown attaché case. The police went to the apartment building, identified the station wagon, and saw the defendant get into the station wagon. They followed the station wagon along the route to the motel and stopped the vehicle. The police found cocaine and marijuana in the defendant's possession.
The Supreme Court held that the "veracity," "reliability," and "basis of knowledge" factors for determining whether an informant's tip creates probable cause are also "relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard." Alabama v. White, 496 U.S. at ___,110 S.Ct. at 2415.
In the instant case, the informant was known to Officer Griffis, who stated that the informant's tips had led to at least 20 arrests and convictions. The officer testified that a tip from this informant was "like money in the bank." The informant had told him that Carpenter would be travelling down South Mobile Avenue, in his own car, and that he would be armed and would have drugs in the car. The officer already knew Carpenter and knew the type of car he drove. The officer saw Carpenter's car leave a residential driveway and enter South Mobile Avenue. The officer followed Carpenter for a brief period and then stopped him.
In Alabama v. White, supra, the Supreme Court held that certain information *Page 631 
received through a tip, which information was verified to nearly the same degree as the information in this case, created a reasonable suspicion to warrant a Terry stop, even though that tip came from an anonymous telephone source. A known informant's tip "is a stronger case than obtains in the case of an anonymous telephone tip." Adams v. Williams,407 U.S. at 146, 92 S.Ct. at 1923. We hold that the facts of this case, given the informant's reliability, created a reasonable suspicion to warrant stopping Carpenter's car based on the known informant's tip.
The second question this Court must answer is whether Officer Griffis was justified in making a protective search of the car for weapons. The informant told Officer Griffis that Carpenter would be armed. After stopping Carpenter, Officer Griffis asked Carpenter to get out of the automobile and to stand behind it. Griffis then saw the butt of a pistol protruding from a zippered carrying case on the floorboard of the driver's seat.
Once a police officer with reasonable suspicion has stopped a suspect in an automobile, the officer has the authority to ask the suspect to get out of the automobile. SeePennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330,54 L.Ed.2d 331 (1977); State v. Calhoun, 502 So.2d 808 (Ala. 1987). This intrusion is de minimis when balanced with concerns for the officer's safety. Pennsylvania v. Mimms, 434 U.S. at 112,98 S.Ct. at 334.
The need to protect police and others justifies protective searches when police have a reasonable belief that the suspect poses a danger. Roadside encounters between police and suspects are hazardous, and danger may arise from the possible presence of weapons in the area surrounding a suspect. Michigan v. Long,463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Because Officer Griffis had a reasonable suspicion to believe that Carpenter was armed, he acted properly in seizing the pistol from the floorboard.
Last, this Court must decide whether there was probable cause to search Carpenter's car after the pistol was found. Officer Griffis had received from a reliable informant a tip informing him that Carpenter would be driving on South Mobile Avenue with a gun and drugs in his possession. Officer Griffis knew Carpenter and knew the type of car that Carpenter drove. He stopped Carpenter on South Mobile Avenue and Carpenter had a gun in his possession. At that point, the information from the informant had been corroborated by Officer Griffis. Clearly, this information would lead a reasonable and prudent person to believe that Carpenter was probably in possession of drugs.Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502
(1983).
Based on the foregoing, the judgment of the Court of Criminal Appeals is affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.