The appellant, James Smith, appeals his February 13, 1992, conviction for unlawful possession of a controlled substance and his sentence of 15 years' imprisonment, split into 3 years' incarceration and 3 years' probation. Before entering a plea of guilty before the Montgomery County Circuit Court, the appellant moved to suppress evidence of crack cocaine that had been discovered by the police at the scene of his arrest. This motion to suppress was denied on February 12, 1992, after a hearing. In entering his guilty plea, Smith reserved the right to appeal the trial court's denial of his motion.
Evidence produced at the hearing on the appellant's motion to suppress tended to *Page 384 
show the following facts. In the early morning of June 18, 1991, Derek Wilson was returning to his apartment after having gotten off work at midnight. Wilson is a detective with the Montgomery Police Department and also serves part-time as a "courtesy officer" for his apartment complex. Wilson testified that, in his latter capacity, he is expected to handle "any disturbances, car burglaries, and what have you." At the time, however, he was off duty from both jobs.
As he drove into the parking lot of the apartment complex that night, he noticed the appellant and another man "suspiciously" standing very close to a Jeep CJ, which he knew belonged to one of the tenants living at the complex. In his year's residency at the complex, he had never seen the two men before. The other man carried an object in his hand that Wilson could not identify, because of the distance. Taking into account the late hour and some car burglaries that had taken place in the complex, Wilson concluded, using his training, that the two men were attempting to burglarize the Jeep.
At that point, Wilson said that he drove his unmarked car "as fast as [he] could" towards the men, who ran and got into another automobile. Before the driver could put the vehicle into gear, Wilson drove his car "up alongside" their car, opened the other vehicle's passenger door, and advised them that he was a police officer. His badge was plainly visible on his clothing. Wilson then asked the appellant and his associate to get out of the vehicle and to speak with him. After the men got out of their car, Wilson walked with them to the rear of the car and spoke to them. He also asked them to put their hands on the car, which they did, but he did not search them or pat them down. He then called in the license plate numbers on the vehicle and discovered that the license was registered to a different vehicle. He also called for a police unit. Wilson testified that, during this time, he observed that the appellant "was under the influence of something, whether it was alcohol or drugs, or whatever."
When the other officers arrived, they conducted a "field interview." In explaining their presence at the complex, the two men stated that they had just dropped off a prostitute who went in the fitness room area. However, Wilson had locked the fitness room two and one-half hours earlier, so he concluded that their explanation was false. Wilson decided to walk over to the Jeep and inspect it. As he was walking toward the vehicle, he spotted in his peripheral vision something dropping from the appellant's right front pocket. Wilson went over to look for the object that had dropped and saw a wadded-up one dollar bill. When he picked up the object, it "felt strange," and its weight "aroused suspicion." Wilson unfolded the bill and found crack cocaine inside.
Upon discovering the crack cocaine, Wilson told the appellant that he was "under arrest for possession of a controlled substance." The appellant immediately replied that Wilson "didn't get that off of me; you got it off the ground."
On appeal, the appellant raises several issues for our consideration, all of which relate to the legality of Wilson's actions under the Fourth Amendment.
 I
The appellant's first contention is that Detective Wilson lacked the authority either to arrest or to stop him. In essence, the appellant argues that because Wilson was off-duty at the time he detained him and because no crime had been committed in Wilson's presence, his actions were those of a private citizen and his subsequent arrest of the appellant was illegal.
Putting aside the question of when the appellant was actually arrested, we must consider first his claim that Detective Wilson was "not acting in his official capacity when he went to investigate Mr. Smith's actions in the parking lot." If this argument had merit, the appellant would effectively render further consideration of his case moot, because a search or seizure conducted by a private party not acting as an agent of the government or with the participation or knowledge of the government is not subject to Fourth Amendment scrutiny.United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652,1656, 80 L.Ed.2d 85 (1984). *Page 385 
However, we are persuaded that Wilson's conduct had to conform to Fourth Amendment standards as they relate to the search and seizure of persons and property. Wilson was drawn to the appellant's suspicious conduct by knowledge and skill gained from his police training and experience. During the entire time that the appellant was detained by Wilson, Wilson conducted himself as an on-duty police officer would have; while he was not officially on duty, he performed the functions of an on-duty officer. We see no reason, therefore, why Wilson, who engaged in normal police business, should not have had to conform his actions to the Fourth Amendment just as he would have had to during the normal work day. See Ex parte Kennedy,486 So.2d 493, 495 (Ala. 1986).
 II
The appellant next contends that Detective Wilson's initial stop of the appellant went beyond the scope of an investigatory detention permitted by Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and amounted to a full custodial arrest.
In Terry, the Supreme Court held that a brief investigatory stop is permissible when a "police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," id. at 30,88 S.Ct. at 1884. Terry further provided that an officer's stop must be based on specific articulable facts and rational inferences from those facts. Id. at 21, 88 S.Ct. at 1879-80. In the subsequent case of Adams v. Williams, 407 U.S. 143,145-46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), the Court explained:
 "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. See [392 U.S.] at 23 [88 S.Ct. at 1881]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Id., at 21-22 [88 S.Ct. at 1879-81]. . . ."
When Detective Wilson entered the parking lot of his apartment complex during the early morning hours of June 18, 1991, he spotted two strangers, one carrying a strange object and both "suspiciously" standing very close to a vehicle that he knew belonged to someone else. In addition, he knew that the apartment complex had been the scene of car burglaries in the past. When he approached the men, they both entered a second car very quickly. Based on these facts, we find that Wilson's stop of the appellant was proper. These are precisely the kind of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a stop. 392 U.S. at 21, 88 S.Ct. at 1880.
Next, we must determine whether Detective Wilson exceeded the scope of activities permitted during an investigatory detention. In analyzing this question, we are mindful of the Supreme Court's observation in United States v. Sharpe,470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), that as "[m]uch as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." Thus, we are compelled to find in a given case "that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v.Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877,64 L.Ed.2d 497 (1980) (footnote omitted).
Under the facts of the case before us, we are not persuaded that Detective Wilson's actions prior to his discovery of the cocaine amounted to a custodial arrest for Fourth Amendment purposes. Wilson approached the appellant and his companion, by himself, at a very late hour, after they had just entered another car and were apparently attempting to leave the scene. He simply opened the passenger door and asked both men to get out of the car and to speak with *Page 386 
him, which they both agreed to do. We find that Wilson's request and his efforts to prevent the car from leaving the scene by opening the passenger door were proper and, more importantly, consistent with a valid investigatory stop. It has been held on many occasions that the police may bring about an investigatory stop by physically blocking the egress of a car in which a criminal suspect is riding. United States v.Jackson, 918 F.2d 236 (1st Cir. 1990); United States v. Gale,952 F.2d 1412 (D.C. Cir. 1992); United States v. Martinez,808 F.2d 1050 (5th Cir.), cert. denied, 481 U.S. 1032,107 S.Ct. 1962, 95 L.Ed.2d 533 (1987). We see no reason therefore, why a police officer could not perform an investigatory stop involving the occupant of a vehicle, by using the less intrusive method of opening one of the car's doors. Similarly, "[o]nce a police officer with reasonable suspicion has stopped a suspect in an automobile, the officer has the authority to ask the suspect to get out of the automobile." Ex parteCarpenter, 592 So.2d 627, 631 (Ala. 1991). "This intrusion is deminimis when balanced with concerns for the officer's safety."Id.
After the men exited their vehicle, they both followed Wilson to the back of their car, where he asked them to place their hands on the car while he called in the car's license plate numbers. However, Wilson never searched the appellant or his companion, nor did he pat them down. After discovering that the license plate was registered to another vehicle, he merely called for an on-duty unit and waited for it to arrive and to conduct a brief field interview. At no time during the encounter did he display his weapon or say or do anything that would lead a reasonable person to believe that he would use physical force to restrain them.
Under these circumstances, we are persuaded that Wilson conducted his investigation using the least intrusive means possible. For us to require an officer to take fewer precautions under these circumstances would jeopardize his or her safety and defeat the clear purpose of Terry. Thus, we find that the appellant was not arrested until after Wilson discovered the cocaine.
 III
The appellant's final contention is that the trial court erred in refusing to find that the cocaine discovered by Detective Wilson was the product of an illegal search or seizure. He argues that Wilson's opening the crumpled dollar bill amounted to a search and that, because Wilson did not have probable cause to believe that the dollar bill contained contraband, his search was illegal. Having already decided that no arrest of the appellant took place prior to the discovery of the cocaine, we will focus only on the actual seizure of the property itself and the appellant's relationship to that property.
We are persuaded that the facts of this case raise the issue of abandonment.
 "In the law of search and seizure, . . . the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. * * * In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.
 "Where the presence of the police is lawful and the discard occurs in a public place where the defendant cannot reasonably have any continued expectancy of privacy in the discarded property, the property will be deemed abandoned for purposes of search and seizure."
W. LaFave, 1 Search and Seizure § 2.6(b) at 465 (2d ed. 1987) (quoting City of St. Paul v. Vaughn, 306 Minn. 337,237 N.W.2d 365, 371 (1975); as quoted in Harrell v. State, 555 So.2d 257,260 (Ala.Cr.App.), aff'd, 555 So.2d 263 (Ala. 1989)). See alsoMitchell v. State, 423 So.2d 904, 906 (Ala.Cr.App. 1982).
By virtue of our holding that Wilson had lawfully stopped the appellant and that he was lawfully detaining him when the appellant dropped the cocaine, we find that Wilson's presence was lawful and that the object fell from the appellant's pants pocket. Clearly, the object fell in a public place. Therefore, the trial court properly held that the appellant abandoned the property within the meaning of the Fourth Amendment. We find no error in the court's overruling the *Page 387 
appellant's motion to suppress the evidence in this case.
Accordingly, the judgment is hereby affirmed.
AFFIRMED.
All Judges concur.