137 P.3d 1024

STATE of Idaho, Plaintiff–Appellant,

v.

Leanna Z. IRWIN (a.k.a. Leanna Tinno),
Defendant–Respondent.

In the Matter of the License Suspension
of Leanna Tinno.

Leanna Tinno, Petitioner–Respondent,

v.

State of Idaho, Respondent–Appellant.

Nos. 30866, 31200.

Court of Appeals of Idaho.

April 6, 2006.

Review Denied June 21, 2006.

Hon. Lawrence G. Wasden, Attorney General; Carol L. Chaffee, Deputy Attorney General, Boise, for appellant. Carol L. Chaffee argued.

Echohawk Law Offices, Pocatello, for respondent. Paul C. Echohawk argued.

LANSING, Judge.

The State appeals from decisions in two cases arising from a traffic stop and the subsequent arrest of Leanna Irwin, a.k.a. Leanna Tinno, for driving under the influence of alcohol (DUI). In the criminal case, the State appeals a district court's order suppressing evidence. In the civil case, the State appeals a district court's intermediate appellate decision reversing the magistrate court's suspension of Irwin's driver's license for refusal to submit to a breath test for alcohol concentration. We reverse the district court's suppression order in the criminal case and affirm the magistrate's license suspension order in the civil case.

## I.

## BACKGROUND

While patrolling one night after dark, two police officers saw an automobile traveling in the opposite direction with its headlights off and its passenger door open. The officers began pursuit and had just activated their patrol car's overhead lights when the other vehicle slowed and the passenger exited the still-moving vehicle in the middle of the roadway. The officers stopped to talk to the passenger, who said that he had disembarked because he had been in an argument with his girlfriend, the driver. After determining that the passenger was unhurt, the officers again pursued the car, which had continued down the road and then turned onto a side street. The officers found the car lawfully parked on the shoulder. Its lights and engine were off, and the windows and doors were closed.

Initially, the officers did not see anyone in the area, but upon looking into the vehicle they saw Irwin curled up on the floor behind the front seats. One of the officers later testified that he could not see Irwin's hands. He testified that, given the traffic violations he had witnessed, together with the appearance that Irwin was trying to hide from the officers, he wanted to see her hands in order to ensure officer safety. He also wanted to prevent Irwin from moving the vehicle in an effort to elude or injure the officers, and was concerned that she might have been injured in the fight with her boyfriend. Therefore, he opened the passenger side door of the two-door vehicle and ordered Irwin to come out. After several commands, Irwin complied, and an officer helped her out of the vehicle. Upon being questioned, Irwin indicated that she was not hurt and admitted she had been driving.

The officers became suspicious that Irwin had been driving under the influence and asked her to take field sobriety tests. She failed several of these and refused to submit to a breath test. She was then arrested for DUI, Idaho Code § 18–8004, and the officers took her driver's license pursuant to I.C. § 18–8002 for refusing to submit to a breath test.

This incident generated two cases: a felony DUI case and a civil proceeding on the suspension of Irwin's license for refusal of the breath test. In the DUI case, Irwin moved to suppress all evidence obtained after the officer opened the door of the vehicle. The district court granted this motion, holding that the officer's opening of the door constituted an illegal search. Irwin also initiated a license suspension hearing under I.C. § 18–8002(4)(b). At the hearing she asserted that her license ought not be suspended because the police had violated her civil rights when they opened her vehicle door. The magistrate disagreed and therefore ordered the suspension of Irwin's driver's license. Irwin appealed this decision to the district court, which reversed. The State now appeals in both cases, arguing that the officer's action was constitutional.

## II.

## ANALYSIS

### A. Suppression of Evidence in the Felony Case

██ A traffic stop is a seizure of the vehicle occupants and is therefore subject to the Fourth Amendment prohibition of unreasonable searches and seizures, *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App. 1996). The presumptive rule is that searches and seizures conducted without a warrant are unreasonable, and thus unlawful, unless an exception to the warrant requirement is applicable. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Zapp,* 108 Idaho 723, 726, 701 P.2d 671, 674 (Ct.App.1985). In determining whether a search was consistent with constitutional standards, we are guided by the tenet that the fundamental right protected by the Fourth Amendment is the individual's reasonable expectation of privacy. *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *Katz,* 389 U.S. at 361, 88 S.Ct. 507; *State v. Foldesi,* 131 Idaho 778, 780, 963 P.2d 1215, 1217 (Ct.App. 1998). Because of the mobility and highly-regulated nature of automobiles, persons traveling in them have a lesser expectation of privacy than they have in their homes. *California v. Carney,* 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

██ Routine traffic stops for investigation of possible traffic violations or other crimes are governed by the well-known standards for investigative detentions set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See Prouse,* 440 U.S. at 653–54, 99 S.Ct. 1391. Thus, an officer may stop a vehicle and question its occupants if the officer has reasonable suspicion of criminal activity, including suspicion that the vehicle is being operated contrary to traffic laws. *Id.* at 661, 99 S.Ct. 1391; *State v. Patterson,* 140 Idaho 612, 614, 97 P.3d 479, 481 (Ct.App. 2004).

The United States Supreme Court has further held that once an officer has lawfully stopped a motor vehicle for a traffic violation, ordering the driver to get out of the vehicle does not offend the Fourth Amendment. *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In *Mimms,* an officer stopped a driver for an expired license plate. Although the officer could not point to objective facts suggesting that the occupants posed a threat to his safety, the officer instructed the driver to step out of the vehicle. When the driver complied, the officer noticed a large bulge under the driver's clothing. A subsequent search revealed that the driver was carrying an unlawfully concealed weapon. The driver sought suppression of that evidence on the basis that the officer's order to exit the vehicle was an illegal seizure. The United States Supreme Court disagreed. It first noted that the heart of Fourth Amendment analysis "is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security,'" *Id.* at 109, 98 S.Ct. 330 (quoting *Terry,* 392 U.S. at 19, 88 S.Ct. 1868), and that such reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). The Court therefore weighed the driver's person-

al liberty interest against the serious risk faced by police officers when they approach a person seated in an automobile, even in routine traffic stops. The Court determined that after a lawful traffic stop, the additional intrusion of ordering a driver out of a vehicle

can only be described as de minimis. The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a " 'petty indignity.' " *Terry v. Ohio*, 392 U.S. at 17[, 88 S.Ct. 1868]. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.

*Mimms*, 434 U.S. at 111, 98 S.Ct. 330.

■ The Court reiterated this position in *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), where it held that an officer's authority to order a driver out of a lawfully stopped vehicle extends to passengers as well. Based on *Mimms* and *Wilson*, we have expressed the general rule that as a matter of course in a valid traffic stop, a police officer may order the occupants of a vehicle to exit or to remain inside. *See State v. Butcher*, 137 Idaho 125, 131, 44 P.3d 1180, 1186 (Ct.App.2002); *State v. Parkinson*, 135 Idaho 357, 363, 17 P.3d 301, 307 (Ct.App. 2000).

■ In this case, there is no question that the officers possessed reasonable suspicion to detain Irwin for traffic violations they had witnessed.[1] Given this, the officers also were entitled to order her out of her vehicle. The question presented is whether by opening the door before giving this command the officers violated the Fourth Amendment. Irwin asserts that it constituted an impermissible search for the officer to open a door without

first orally ordering her out of the vehicle and giving her the opportunity to come out on her own volition.

Irwin's argument presents an issue of first impression in Idaho, but courts from other jurisdictions have responded to similar or related arguments and, so far as we have found, none has held that a Fourth Amendment violation occurred because an officer opened a vehicle door before directing an occupant to come out. Perhaps the most factually similar case is *State v. James*, 13 P.3d 576 (Utah 2000), where an officer had received a tip about a vehicle being operated in a reckless manner and found the vehicle parked and idling in front of a residence. The officer opened a door and asked the driver to come out. The Utah court held that this did not constitute an illegal search:

Causing the door to be opened in some manner was a reasonable and practical means for obtaining compliance with [the officer's] authority to lawfully require [the defendant] to step from the vehicle. As such, the opening of the door was an incidental factor in the investigation ... and not an independent search of the vehicle. To draw distinctions as to who actually opened the door and the nature of any conversation or notification occurring beforehand would elevate form over substance.

*Id.* at 580. Similarly, in *Smith v. State*, 623 So.2d 382 (Ala.Crim.App.1993), it was held that no Fourth Amendment violation occurred where an officer who suspected the occupants of having attempted to burglarize another vehicle opened the door of their automobile before directing them to come out. *See also State v. Ferrise*, 269 N.W.2d 888 (Minn.1978) (holding officer was justified in opening door to get identification of passenger whose window was covered with snow).

To support her position that an officer generally may not open an automobile to extract an occupant without first giving the occupant an opportunity to come out on the officer's command, Irwin relies upon the rule

---

1. Idaho Code § 49–903 mandates that headlights be lit between sunset and sunrise, and I.C. § 49–1501 authorizes a police officer to issue a citation for this infraction. Driving with an open

door and permitting a passenger to exit in the middle of the roadway is arguably misdemeanor reckless or inattentive driving, I.C. § 49–1401.

that during an investigative detention officers are required to use the least intrusive investigative method reasonably available to verify or dispel their suspicion. *See Brignoni–Ponce*, 422 U.S. at 881–82, 95 S.Ct. 2574; *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct.App.2004); *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. This argument is unpersuasive, however, because an officer's action of opening a car door before directing the occupant to exit is no more intrusive than a verbal command followed by the occupant's opening the door. Either way, the door will be opened and the officer will see inside. The officer's act here did not expose to view any more of Irwin or the interior of her vehicle than would have been exposed if Irwin had opened the door herself. As the court in *Ferrise* observed:

> If an officer orders a driver to get out of his car ... what he in effect is doing is also ordering the driver to open the door, because that is generally the only reasonable way a person can get out of a car. Operationally then, there is little practical difference between ordering a driver to open his door and get out of his car ... and opening the door for the driver and telling him to get out....

*Ferrise*, 269 N.W.2d at 890. To the extent that Irwin argues that the car door need never have been opened by either the officer or Irwin because the officer should have first attempted to investigate by a less intrusive method, such as speaking to her solely through the car window, the argument is without merit; it is utterly at odds with the rule that police officers may order the occupants out of lawfully stopped vehicles. Under *Mimms* and *Wilson*, officers may give this command as a matter of course without first attempting to investigate by other means.

The rationale of *Mimms*, which placed officer safety above a *de minimis* intrusion on a motorist's privacy, is even more compelling here. The *Mimms* court noted the general danger for police officers that requires wariness in any traffic stop, but the officers in this case had more specific reasons for concern. Irwin's passenger had exited or been ejected from Irwin's vehicle in the middle of the roadway while the vehicle was in motion. The police had activated their overhead lights and pursued the vehicle, but Irwin had not stopped. When the officers made contact, she was lying on the floor, in a position by which she could have been concealing a weapon. Balanced against the risk to the officers, any minor intrusion upon Irwin's privacy occurring from the opening of her car door was entirely reasonable.

Given that officers have clear authority to order people out of vehicles during a roadside stop, it is constitutionally irrelevant whether the officer or the occupant opens the car door to enable the occupant to exit. Accordingly, the district court erred in holding that the officer's act of opening the door of Irwin's vehicle was an unconstitutional search.

**B. Suspension of Driver's License for Refusal to Submit to BAC Testing**

After Irwin's driver's license was seized on her refusal to submit to a breath test, she filed a request for a hearing under I.C. § 18–8002(4)(b) to challenge the suspension of her license. She argued that a license suspension would be unlawful because the police had violated her civil rights during the traffic stop. The magistrate court disagreed with this position and suspended her license, but the district court, sitting in its appellate capacity, reversed.

 Where there has been an intermediate appeal to the district court, we base our review upon the record of the proceedings in magistrate court and render our decision independent of, but with due regard for, the district court's decision. *In re McNeely*, 119 Idaho 182, 186, 804 P.2d 911, 915 (Ct.App. 1990). We defer to the magistrate's factual findings if they are supported by substantial evidence and freely review questions of law, including issues of statutory interpretation. *Ausman v. State*, 124 Idaho 839, 840–41, 864 P.2d 1126, 1127–28 (1993); *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App. 2001).

By the terms of I.C. § 18–8002(1), any person who drives a motor vehicle on the highways of this state is deemed to have given consent to evidentiary testing to determine concentration of alcohol or other intoxicants, provided that the officer making the request has reasonable grounds to believe that the person has been driving while under the influence of such substances. *See Thompson v. State,* 138 Idaho 512, 514, 65 P.3d 534, 536 (Ct.App.2003); *State v. Nickerson,* 132 Idaho 406, 410, 973 P.2d 758, 762 (Ct.App.1999); *State v. Harmon,* 131 Idaho 80, 85, 952 P.2d 402, 407 (Ct.App.1998). If a driver refuses the test, her driver's license must be seized by the peace officer, and unless the driver requests a hearing on the matter, the license will be suspended. I.C. § 18–8002(4)(a), (c).

If the driver requests a hearing, the burden of proof is upon the driver, and the court must suspend all driving privileges unless it finds that the officer "did not have legal cause to stop and request [the driver] to take the test or that the request violated his civil rights." I.C. § 18–8002(4)(b). The Idaho Supreme Court has held that a motorist contesting the license suspension must prove at least one of the following: (1) that the peace officer stopping defendant did so without legal cause; (2) that the defendant was not requested by a peace officer to submit to an evidentiary test; (3) that the requesting peace officer did not have reasonable grounds or legal cause to believe that defendant had been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances; (4) that the request violated defendant's civil rights; (5) that defendant was not advised of the information regarding refusal mandated by I.C. § 18–8002(3); (6) that defendant did not refuse to submit to the requested evidentiary test; or (7) that, although defendant refused the requested evidentiary test, he did so with sufficient cause. *Head v. State,* 137 Idaho 1, 4–5, 43 P.3d 760, 763–64 (2002); *In re Griffiths,* 113 Idaho 364, 368, 744 P.2d 92, 96 (1987).

At the hearing, Irwin relied upon the fourth of these justifications—that the police officers violated her civil rights when they opened the door of her vehicle. We have held that this act of the officer was not unconstitutional. Irwin therefore did not show a violation of her civil rights, and the magistrate properly ordered suspension of her driver's license.

Because we affirm the magistrate's decision, there is no need to address the State's arguments that Irwin failed to request a refusal hearing within the statutory time limit of seven days, I.C. § 18–8002(4)(b), and that in the intermediate appeal the district court improperly shifted the burden of proof to the State.

## III.

### CONCLUSION

There is no Fourth Amendment violation when an officer lawfully investigating a traffic violation opens a car door to exercise his authority to order an occupant to exit the vehicle. In Irwin's criminal case, we therefore reverse the district court's order suppressing evidence collected after the officer opened the door, and remand for further proceedings.

In the civil license suspension case, we affirm the magistrate's decision suspending Irwin's driver's license.

Chief Judge PERRY and Judge GUTIERREZ concur.