**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49449**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: December 1, 2022** |
| Plaintiff-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| PATRICIA LEE KILDOW, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Orders granting suppression motion and motion to dismiss, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for respondent. Jason C. Pintler argued.

_____

BRAILSFORD, Judge

The State appeals from the district court's order granting Patricia Lee Kildow's motion to suppress and the court's subsequent order dismissing the charges against Kildow. We reverse and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2021, a 911 caller reported observing two blonde females in a red GMC parked at an apartment complex who were smoking methamphetamine out of a glass pipe that looked "like a light bulb." During the call, the caller reported that the GMC was leaving the apartment complex; the caller was following it; and it pulled into a superstore parking lot. In addition to a description of the vehicle, its occupants and their conduct, the caller also provided his identity and that of his

1

companion, their contact information, and their location. Officer Rudan received this information in dispatch notes, responded to the report "immediately," and located the GMC and its occupants matching the caller's description in the superstore parking lot.[1] Officer Rudan parked his patrol vehicle and approached the GMC. When the driver began to exit the GMC, Officer Rudan instructed the driver to remain in the vehicle.

After Officer Rudan identified the driver, Kildow, and the passenger, Kildow's daughter, Officer Rudan requested assistance and returned to his patrol vehicle to conduct a records check on Kildow and the passenger. During this time, other officers arrived on the scene, including Officer Lloyd and Officer Albers, who is a drug-dog handler. Officer Rudan instructed Officer Lloyd to remove Kildow and the passenger from the GMC. Officer Lloyd testified that she believed she was removing the occupants from the vehicle so Officer Albers could perform a drug-dog sniff and that Officer Lloyd approached the passenger-side door, asked the passenger to step out, and opened the door. Immediately upon opening the door, Officer Lloyd saw "a clear, plastic water bottle that had been modified into a bong," which she recognized as drug paraphernalia.[2] During a subsequent search of the GMC, the officers discovered contraband, including methamphetamine, in Kildow's purse.

The State charged Kildow with possession of methamphetamine and drug paraphernalia. At the preliminary hearing, Officers Rudan, Albers, and Lloyd testified. Thereafter, Kildow filed a motion to suppress the evidence discovered during the search. At an evidentiary hearing, Officer Lloyd testified again. In addition to this testimony, the district court also considered the preliminary hearing transcript; the audio of the 911 call; footage from the officers' body cameras; and the incident detail report, which included the dispatch notes from the 911 call.

Following the hearing, the district court issued a written decision granting Kildow's suppression motion. The court concluded Officer Rudan detained Kildow when Officer Rudan asked Kildow to remain in the car. Further, the court found that the 911 caller provided: (1) a description of the GMC, its occupants, and its location, which Officer Rudan corroborated;

---

[1]     The 911 caller provided a license plate for the GMC and transposed the last two numbers. The district court found, however, that the report was reliable despite this transposition.

[2]     After Officer Lloyd opened the door and saw drug paraphernalia, Officer Albers' drug dog conducted a sweep around the GMC, entered the vehicle, and alerted. The dog sniff, however, is not at issue in this case.

(2) first-hand observations of the occupants' conduct with "reliable details of how [the 911 caller] could distinguish the smoking of illegal drugs from a legal substance by the description of 'light bulb' and 'white smoke'"; and (3) the reporting parties' "identities, contact information, and location." Based on these findings, the court concluded the 911 caller's information "had sufficient indicia of reliability to justify detention of the [GMC] and its occupants" and provided reasonable suspicion to detain the GMC's occupants.

Despite concluding Officer Rudan lawfully detained the GMC's occupants, the district court concluded the officers were not justified in ordering the occupants to exit the GMC because the officers were not investigating a traffic violation; the State had not shown the occupants "posed a risk of danger that would justify a *Terry*[3] frisk"; and the occupants "were only asked out of the vehicle so that the drug-sniffing canine could engage in a free-air sniff of the exterior of the vehicle." Further, the court concluded probable cause under the automobile exception did not exist to justify the officers ordering the GMC's occupants to exit the vehicle. Accordingly, the court held the search of the GMC was unconstitutional and granted Kildow's suppression motion.

The State timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State argues the district court erred by granting Kildow's suppression motion. Specifically, the State challenges the court's conclusion that "the general rule that an officer may

---

[3]     *See Terry v. Ohio*, 392 U.S. 1, 30-31 (1968) (creating stop-and-frisk exception to Fourth Amendment warrant requirement).

order a suspect from a car during the course of a detention does not apply when the officer is investigating a non-traffic offense."  In response, Kildow argues an officer's authority to order a suspect to exit a vehicle is limited to instances in which the officer conducted a traffic stop of a moving vehicle.

The United States Supreme Court first articulated the rule that an officer may order a lawfully detained driver to exit the vehicle in *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). In *Mimms*, the officer stopped a vehicle displaying an expired license plate.  *Id.* at 107.  Per the officer's standard practice, he asked the driver to exit the car despite having "no reason to suspect foul play from the particular driver at the time of the stop" and not having seen anything "unusual or suspicious about his behavior."  *Id.* at 109-10.  Once the driver exited the vehicle, the officer noticed a large bulge under the driver's jacket, frisked the driver, discovered a loaded handgun, and arrested him for carrying a concealed weapon without a license.  *Id.* at 107.  The Pennsylvania Supreme Court reversed the denial of the driver's suppression motion, concluding the officer's order to exit the vehicle was "an impermissible 'seizure'" because he "could not point to 'objective observable facts to support a suspicion that criminal activity was afoot or that the occupants of the vehicle posed a threat to police safety.'"  *Id.* at 108.

On appeal, the United States Supreme Court disagreed.  *Id.* at 108.  In addressing the issue, the Court noted the inquiry "focus[ed] not on the intrusion resulting from the request to stop the vehicle or from the later 'pat down,' but on the incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully stopped."  *Id.* at 109.  The Court "recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile."  *Id.* at 110.  The Court then weighed this risk against "the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car."  *Id.* at 111.  Balancing these factors, the Court concluded the intrusion caused by asking the driver to exit the vehicle was de minimis.  *Id.*  The Court reasoned:

> The driver is being asked to expose to view very little more of his person than is already exposed.  The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it.  Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a "petty indignity."

*Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 17 (1968)).

4

The United States Supreme Court extended the *Mimms* rule to apply to passengers in *Maryland v. Wilson*, 519 U.S. 408, 415 (1997), holding that "an officer making a traffic stop may order passengers to get out of the car pending the completion of the stop." In that case, the Court reasoned that the risk of harm to both the police and the occupants of a stopped vehicle is minimized if the officers routinely exercise unquestioned command of the situation. *Id.* at 414.

In *State v. Irwin*, 143 Idaho 102, 137 P.3d 1024 (Ct. App. 2006), this Court considered the *Mimms* rule and concluded an officer may open a vehicle's door before ordering its occupants to exit without violating the Fourth Amendment. In that case, the officers were patrolling after dark and "saw an automobile traveling in the opposite direction with its headlights off and its passenger door open." *Id.* at 103, 137 P.3d at 1025. After the officers activated their overhead lights and began pursuing the vehicle, its passenger exited the moving vehicle and the officers stopped to ensure the passenger was uninjured. *Id.* Later, the officers located the vehicle lawfully parked with its lights and engine off and its doors and windows closed. *Id.* In the vehicle, "they saw Irwin curled up on the floor behind the front seats." *Id.* The officer testified that "he wanted to see [Irwin's] hands in order to ensure officer safety," "wanted to prevent Irwin from moving the vehicle in an effort to elude or injure the officers," and wanted to ensure Irwin was not injured. *Id.* As a result, the officer opened the passenger door and "ordered Irwin to come out." *Id.*

On intermediate appeal, the district court ruled the officer violated Irwin's civil rights when he opened her vehicle door, and the State appealed. *Id.* at 104, 137 P.3d at 1026. Addressing this ruling, this Court reversed. *Id.* at 106, 137 P.3d at 1028. It reasoned:

> [A]n officer's action of opening a car door before directing the occupant to exit is no more intrusive than a verbal command followed by the occupant's opening the door. Either way, the door will be opened and the officer will see inside. The officer's act here did not expose to view any more of Irwin or the interior of her vehicle than would have been exposed if Irwin had opened the door herself.

*Id.* The Court concluded that "given that the officers have clear authority to order people out of vehicles during a roadside stop, it is constitutionally irrelevant whether the officer or the occupant opens the car door to enable the occupant to exit." *Id.*; *see also State v. Jay*, 167 Idaho 592, 598, 473 P.3d 861, 867 (Ct. App. 2020) (concluding officer had reasonable suspicion of traffic violation and opening car door did not constitute unlawful search).

In this case, the district court distinguished *Irwin* when granting Kildow's suppression motion, concluding that "this case is not a traffic stop for any traffic violation and there was never any evidence presented that there was ever any concern about the welfare of any occupant of the

5

vehicle." The State argues that "this distinction is erroneous because the rationale for the [*Mimms*] rule is a balancing of a risk to the officer against [the] degree of intrusion"; "the risk to the officer is not *less*" because of the nature of the crime being investigated; and "there is no legal basis for differentiating between traffic and non-traffic offenses." Kildow responds that "it is not the nature of the investigation that matters"; rather, "it is whether the seizure begins with an officer conducting a traffic stop."

Accordingly, at issue is whether an officer must have reasonable suspicion of a traffic violation versus reasonable suspicion of some other criminal activity before ordering the occupants of a vehicle to exit after lawfully detaining them. We hold that, if an officer has lawfully detained the occupants of a vehicle, the officer may order the occupants to exit the vehicle regardless of whether the officer detained the occupants to investigate a traffic violation or some other criminal activity. The dispositive inquiry is whether the officer had reasonable suspicion to lawfully detain the occupants in the vehicle before ordering them to exit. Kildow neither disputes that Officer Rudan had reasonable suspicion of criminal activity to detain Kildow and the passenger nor otherwise contends the officers unlawfully detained them. Because Officer Rudan lawfully detained the GMC's occupants in the vehicle, the officers had the authority to order both Kildow and the passenger to exit the vehicle.

Contrary to Kildow's assertions, the rationale in *Mimms* for allowing an officer to order occupants to exit a vehicle applies equally in this case. *See Mimms*, 434 U.S. at 110 (recognizing "inordinate risk confronting an officer"). As the United States Supreme Court noted, the focus on whether the officer's intrusion is unconstitutional is not "on the intrusion resulting from the request to stop the vehicle or from the later 'pat down.'" *Id.* at 109. Rather, the focus is on the intrusion caused by the officer's order for the occupants to exit the vehicle. *Id.* Even if the reasonable suspicion allowing the detention does not relate to a traffic violation, the intrusion to the occupants of a lawfully detained vehicle remains the same: They have already been lawfully detained; they will be detained while standing versus sitting in the vehicle; and they are exposing only a little more of their person than has already been exposed. *Id.* at 111.

Likewise, the risks the officers encountered while investigating the report that Kildow and her passenger were smoking methamphetamine in the GMC are the same risks attendant to investigating the occupants of a vehicle stopped for a traffic violation. Nothing distinguishes the risks to the officer in *Mimms*, who was investigating an expired license plate, from the risks to the

officers in this case, and there is no basis to conclude the officers in this case faced some lesser risk. Rather, the risk remained the same that the officers could not see the occupants' hands or that the occupants might reach for a weapon or move the vehicle in an effort to elude or injure the officers.

That "none of the officers testified that either [Kildow] or her daughter posed a danger to the officers or others," as Kildow notes, is not a basis to conclude the officers could not order the GMC's occupants to exit. Although the officers in *Irwin* had specific safety concerns, such concerns are not necessary to support an officer's authority to order the occupants of a lawfully detained vehicle to exit. The *Mimms* Court established the rule not in the context of specific safety concerns but rather in the context of the officer following a "standard practice," having "no reason to suspect foul play from the particular driver at the time of the stop," and not having seen anything "unusual or suspicious about his behavior." *Id.* at 109-10. Moreover, Officer Lloyd testified that she removed the GMC's occupants per "policy and procedure" and that "it's a safety risk" to have someone in the vehicle during a drug-dog sniff. Finally, that Officer Lloyd did not ask the passenger to exit the vehicle until later during the detention is not a basis to conclude the order was unlawful. As Kildow concedes, "the authority to order the occupants to get out of a lawfully stopped vehicle remains throughout the duration of the lawful seizure."

At oral argument, Kildow asserted the United States Supreme Court's decision in *Rodriguez v. United States*, 575 U.S. 348 (2015), precludes the application of the *Mimms* rule to allow an officer to order an occupant of a lawfully detained vehicle to exit absent a traffic stop. Specifically, Kildow relies on the Court's statement in *Rodriguez* that "highway and officer safety are interests different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular." *Id.* at 357. The Idaho Supreme Court has previously discussed the meaning of this and related language in *Rodriguez*. In *State v. Pylican*, 167 Idaho 745, 753-54, 477 P.3d 180, 188-89 (2020), the Court addressed whether an officer unconstitutionally prolonged a traffic stop by ordering the occupants of a vehicle to exit in order to conduct a drug-dog sniff. In that context, the Court ruled that "*Rodriguez* does not bar officers from ordering occupants of a lawfully stopped vehicle to exit in order to investigate possible crimes unrelated to a valid traffic stop." *Id.* at 754, 477 P.3d at 189. In *State v. Warren*, 169 Idaho 588, 593, 499 P.3d 423, 428 (2021), the Court considered whether *Rodriguez* means that "*only* stops related to motor vehicle code investigations allow for the detention of a vehicle's passengers" and concluded that "nothing

7

in *Rodriguez* states that a traffic stop which gives rise to reasonable suspicion of another crime then transforms the subsequent investigation into a *non-traffic* stop with a slate of different rules." *See also State v. Wharton*, 170 Idaho 329, 335, 510 P.3d 682, 688 (2022) ("[T]he State's proposed practice of checking passengers for outstanding warrants during a traffic stop, as a matter of course, is a negligibly burdensome precaution for officer safety that the Fourth Amendment does not forbid. Accordingly, when warrant checks on passengers do occur, they do not unlawfully extend a stop under *Rodriguez*."). Although these cases do not directly address whether a traffic stop is an essential component of an officer's authority under *Mimms* and its progeny to order the occupants to exit a lawfully detained vehicle, our ruling that a traffic stop is not required is in accord with the Idaho Supreme Court's narrow reading of the language in *Rodriguez* on which Kildow relies.

Because Officer Rudan lawfully detained Kildow and the passenger, Officer Lloyd had authority to order the passenger to exit the vehicle. That Officer Lloyd actually opened the door rather than the passenger is "constitutionally irrelevant." *See Irwin*, 143 Idaho at 106, 137 P.3d at 1028 (ruling whether occupant or officer opens door is constitutionally irrelevant). Officer Lloyd's act exposed no more view of the GMC or its interior than the passenger would have exposed if she had opened the door. *See id.* (providing rationale for allowing officer to lawfully open door). Once the door was open, the drug paraphernalia was in plain view and justified the subsequent search of the GMC. *See Baldwin v. State*, 145 Idaho 148, 155, 177 P.3d 362, 369 (2008) (ruling officer must lawfully make initial intrusion to support plain view exception).

## IV.

## CONCLUSION

The district court erred by granting Kildow's suppression motion and dismissing the charges against her. Accordingly, we reverse the court's orders granting suppression and dismissing the charges and remand for further proceedings consistent with this opinion.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.