**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46219**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: January 16, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) |
| SPENCER EDWARD COX, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Judgment of conviction for possession of methamphetamine, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Spencer Edward Cox appeals from the judgment of conviction entered upon his conditional guilty plea for possession of methamphetamine in violation of Idaho Code § 37-2732(c). Specifically, Cox appeals the district court's denial of his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The district court set forth the underlying facts after an evidentiary hearing on Cox's motion to suppress:

> On January 8, 2018, at approximately 1:48 a.m., Officer Jason Green, with the Boise Police Department, was driving through the parking lot of the Super 8 hotel in Boise when he noticed what appeared to be a person sleeping in the driver's seat of a running four-door sedan. Earlier, around 11:00 p.m. on

1

January 7, Officer Green had noticed the same car pull into the parking lot and the occupant did not emerge from the car. At approximately 12:30 a.m., Officer Green returned to the parking lot and noticed the same car located in a different parking spot. Thus, when he returned again at 1:48 a.m. to see the car in yet another parking spot with the engine running, he decided to investigate. He had previously been informed by Super 8 management that they did not wish to have anyone sleeping in their parking lot. This is a known high crime area and a common location of illegal drug transactions.

Officer Green called Officer Marshall Plaisted for assistance. They both approached the car on foot and, while standing at the door, Officer Green noticed the driver's seat was down and a male, later identified as [Cox], lying asleep in the driver's seat. He also noticed that there was a small baseball bat with the hilt of the bat next to [Cox's] hand as well as a large folding knife in between his legs in his lap. While standing there, Officer Green shined his flashlight inside of the vehicle and on [Cox], who did not respond. Officer Johnson then arrived on scene to assist. Officer Johnson stood at the front passenger side door while Officer Plaisted stood at the rear driver's side door.

Officer Green then knocked on the driver's side window with his flashlight. [Cox] startled awake and opened the driver's side door.[2] Officer Green asked him to place his hands on the steering wheel. [Cox] was quite excitable, speaking quickly and acting agitated. Officer Green had to continually remind [Cox] to keep his hands on the steering wheel. [Cox] appeared to Officer Green as though he was under the influence of a stimulant. Officer Green reached into the vehicle to remove the knife from between [Cox's] legs.

Once Officer Green took the knife, he told [Cox] he was going to remove him from the vehicle by holding his left hand. Officer Green did so to prevent [Cox] from grabbing any additional weapons, such as the baseball bat. [Cox] stepped out while Officer Green was holding his left hand and, once out, Officer Green then took [Cox's] right hand and held both hands behind [Cox's] back while standing next to the open driver's side door. Officer Green did not shut the driver's side door after [Cox] exited, nor did [Cox] ask him to shut the door or otherwise attempt to shut the door. It is the practice of Boise Police Department officers to "leave things as they lie," meaning that if the officer opens a door or window to a vehicle, (s)he will subsequently close it. If the detainee opens the door or window, officers will leave it open unless asked to close it by the detainee.[3]

---

[2]    There was conflicting testimony about who opened the door and how it was opened. The audio/video footage from Officer Johnson's body camera clearly reveals that [Cox] opened the door when Officer Green knocked with his flashlight. Further, at no time did Officer Green, or any of the other officers, order [Cox] to open the door. Rather, Officer Green knocked on the window and [Cox] opened the door. Though Officer Green testified that he may have asked [Cox] to open the door, this clearly was not the case as is revealed by the videos.

[3]    Further, Officer Green--who was a canine officer for several years--and Officer Plaisted testified that for purposes of an exterior canine sniff, it makes little difference whether a door or window is open or closed. A trained drug detention canine's sense of smell is sensitive such that its ability to detect odors is unaffected by openings to a vehicle.

After Officer Green performed a pat search for weapons, he had [Cox] walk to the front bumper of his patrol car. Once at the patrol car, Officer Green obtained [Cox's] information verbally and ran it through dispatch. While Officer Green and [Cox] were standing next to his patrol vehicle, Officer Plaisted walked his certified narcotic detection canine, Geno, around the vehicle. Geno and Officer Plaisted have been working together for four years, although Officer Plaisted has been a certified canine handler for seven years. From his experience working with Geno, Officer Plaisted is familiar with Geno's changes in behavior when he detects an odor of narcotics, including rapid sniffing, head snapping toward the odor, closed mouth and drooling. Geno's final response is to sit. To ensure that Geno's sit is indeed a final response, Officer Plaisted will attempt to direct Geno away from the odor. If Geno remains seated, Officer Plaisted knows the sit is an alert because Geno is trained to stay with the odor.

Here, Officer Plaisted approached [Cox's] vehicle with Geno and he saw that it was still running, with all the windows rolled up, the heater on, and the driver's door open. He walked Geno to the passenger side of the vehicle[;] Geno commenced an exterior sniff, moving in a counter-clockwise direction while Officer Plaisted walked beside him. As Geno rounded the front of the car, Geno pulled hard on the leash towards the open door. Officer Plaisted noticed a change in Geno's behavior at this point, as Geno began drooling and sniffing quickly, with his mouth closed and his head pulling toward the open door. Geno began sniffing the driver's door pocket and sat down in the area between the open door and the interior compartment. Officer Plaisted attempted to redirect Geno's attention, giving him another command to sniff. However, Geno's head snapped towards the interior of the vehicle, he sniffed along the driver's floorboard and sat down again. At no point did Geno actually get into the vehicle.

Based upon Geno's change in behavior and through his training and experience, Officer Plaisted knew this was an alert. Officer Plaisted then looked at the areas [where] Geno had alerted and, in the driver's door pocket, saw a pack of cigarettes. He opened the cigarette box and saw a small baggie that had a crystal-like substance in it that later tested positive for methamphetamine.

As a result of this encounter, the State charged Cox with possession of methamphetamine, possession of paraphernalia, and resisting and obstructing an officer. Cox filed a motion to suppress, arguing the officers had a duty to close the vehicle's door because Cox was not in a position to close his door himself after the officers removed him from his vehicle. The district court denied the motion, concluding that the dog sniff was instinctual and not facilitated or encouraged by the officers and that the officers did not have a duty to close the door because Cox had opened it voluntarily and did not ask the officers to close it. Cox subsequently entered a conditional guilty plea to possession of methamphetamine and reserved his right to appeal the denial of his motion to suppress.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

### A.    Dog Sniff Did Not Violate Cox's Fourth Amendment Rights

Cox argues the officers conducted a warrantless search in violation of the Fourth Amendment by facilitating Geno's entry into the vehicle. Related to this argument, Cox challenges the district court's findings that Geno never actually entered the vehicle and that Cox voluntarily opened the door. The State responds that the district court correctly concluded Geno's entry was "instinctive" and not facilitated by the officers and, therefore, did not violate the Fourth Amendment. We agree with the State.

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* Pursuant to the automobile exception, a warrantless search of a vehicle is authorized when there is probable cause to believe the vehicle contains contraband or evidence of criminal activity. *United States v. Ross*, 456 U.S. 798, 823-24 (1982); *State v. Smith*, 152 Idaho 115, 120, 266 P.3d 1220, 1225 (Ct. App. 2011). When a reliable drug dog indicates that a lawfully stopped automobile contains the odor of controlled substances, the officer has probable cause to believe there are drugs in the automobile and may search it without a warrant. *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999); *State v. Naranjo*, 159 Idaho 258, 259, 359 P.3d 1055, 1056 (Ct. App. 2015); *State v.*

4

*Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005). A reliable drug dog's indication on the exterior of a vehicle is not a search for Fourth Amendment purposes. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *see also State v. Aguirre*, 141 Idaho 560, 563, 112 P.3d 848, 851 (Ct. App. 2005).

Likewise, this Court in *Naranjo* has held that a drug dog's instinctive action of sniffing inside the interior of a vehicle does not constitute a search for Fourth Amendment purposes as long as an officer did not facilitate the sniff. *Naranjo*, 159 Idaho at 261, 359 P.3d at 1058. In *Naranjo*, an officer ran his drug dog around the exterior of Naranjo's vehicle after he had left his driver's side window open following a traffic stop. *Id.* at 259, 359 P.3d at 1056. The officer directed the dog to sniff the driver's side door seam and, while doing so, "the dog spontaneously moved his head up to the open window and thereafter alerted." *Id.* The officer searched the vehicle and found methamphetamine and paraphernalia in the driver's side door panel, and the State charged Naranjo with possession. *Id.* Naranjo moved to suppress all the evidence obtained from the dog sniff, and the district court denied the motion. *Id.*

On appeal, Naranjo argued "the dog's brief, spontaneous entry into the open window exceeded the scope of an exterior vehicle sniff, amounting to an unconstitutional search without a warrant or probable cause." *Id.* at 259-60, 359 P.3d at 1056-57. The Court rejected this argument. It noted that "the district court found that no officer opened Naranjo's window and there was no indication the dog was doing anything other than acting by instinct and *leading itself to the odor source*." *Id.* at 260, 359 P.3d 1057 (quotations omitted). The Court, following federal Fourth Amendment case law, ruled that "absent police misconduct, the instinctive actions of trained drug dogs do not expand the scope of an otherwise legal dog sniff to an impermissible search without a warrant or probable cause." *Id.* Further, the Court ruled that "a drug dog following a scent into a vehicle's interior is not a search" and "a dog may follow the scent to its source without any indication it has detected an odor before entering a vehicle." *Id.* Based on this latter ruling, the Court noted that a drug dog's behavior before entering a vehicle is not constitutionally significant. *Id.* Rather, the Court emphasized the focus of the constitutional analysis of a dog sniff is "whether the dog's acts were instinctual and whether police facilitated or encouraged the acts." *Id.* "'[I]nstinctive' implies the dog enters the car without assistance, facilitation, or other intentional action by its handler." *United States v. Pierce*, 622 F.3d 209, 214 (3rd Cir. 2010).

5

*Naranjo* is dispositive of Cox's appeal. As in *Naranjo*, the district court found that "Geno's sniff was an instinctual progression from its initiation at the passenger side of the vehicle to the eventual alert at the v-area between the open driver's side door and the interior compartment" and that "Officer Plaisted did not encourage or facilitate Geno's advance to the open door." Further, the court found that Cox opened his door after Officer Green knocked on the window and that Officer Green did not open the door. These findings are supported by substantial evidence. *See Atkinson*, 128 Idaho at 561, 916 P.2d at 1286 (noting appellate court accepts trial court's findings of fact supported by substantial evidence).

Although the Court in *Naranjo* addressed a scenario in which an occupant of the vehicle opened a window rather than a door, Cox does not offer any specific reason why the analysis in *Naranjo* should not be extended to open doors. We conclude, as other courts have, that the analysis is the same for windows and doors opened by the vehicle's occupants. *See, e.g.*, *Pierce*, 622 F.3d at 214 (applying analysis of whether drug dog's entry is instinctual and not facilitated by officers when dog jumped through open door into vehicle). Accordingly, Geno's sniff of the interior of Cox's vehicle through his open door was not an unlawful search.

Contrary to *Naranjo*, Cox argues the proper "constitutional analysis in the drug sniff context turns on whether the officers are examining something which the owner has already intended to expose to public perception." Cox's proposed analysis, however, is inconsistent with the constitutional analysis articulated in *Naranjo*, which focuses on whether the dog sniff was instinctual and not facilitated by an officer. By proposing a different analysis than the one adopted by this Court in *Naranjo*, Cox implicitly urges this Court to overturn *Naranjo*, which we decline to do.

In the context of the proper analysis articulated in *Naranjo*, Cox's argument is essentially that Officer Green facilitated Geno's sniff by knocking on Cox's window and by not shutting his door after he opened it. Cox challenges the district court's factual finding that he "voluntarily opened the door for [the] officers" because Officer Green made a "nonverbal request" for Cox to open his door by knocking on his window.[1] A necessary premise of Cox's argument is that

[1] Despite arguing that he did not voluntarily open the door, Cox also inconsistently argues that "the question of who physically opened the door is 'constitutionally irrelevant.'" In support, he relies on *State v. Irwin*, 143 Idaho 102, 137 P.3d 1024 (Ct. App. 2006), which he contends stands for the proposition that "there is no practical difference between the situation where the officer opens the door himself and the situation where the occupant opens it at the officer's

Officer Green's knock on Cox's window was a request to open his door and that a reasonable person would not have felt at liberty to ignore the request. *See, e.g.*, *Florida v. Bostick*, 501 U.S. 429, 436 (1991) ("[T]he appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.").

We decline, however, to rule that an officer's knock on a driver's window is a command for the driver to open his door. Such a ruling would be inconsistent with this Court's prior decisions, which have concluded that a driver may ignore an officer's knock on his vehicle's window. For example, in *State v. Randle*, 152 Idaho 860, 276 P.3d 732 (Ct. App. 2012), this Court concluded that "when the officer parked behind Randle's vehicle, left the patrol car's headlights on, approached Randle's vehicle and *knocked on the window*, such conduct would *not* have communicated to a reasonable person that he or she was *not* at liberty to ignore the officer's presence and go about his or her business." *Id.* at 866, 276 P.3d at 738 (emphasis added).

Similarly, in *State v. Zubizareta*, 122 Idaho 823, 839 P.2d 1237 (Ct. App. 1992), this Court concluded a driver can ignore an officer's knock on the window of the driver's vehicle. In that case, an officer approached Zubizareta's car and knocked on the driver's closed window. *Id.* at 825, 839 P.2d at 1239. This Court concluded that "Zubizareta was not seized when [the officer] first walked up to his car, tapped on the window, and engaged Zubizareta in brief conversation"; "Zubizareta voluntarily complied with the request to roll down the window"; and "[h]is freedom to go about his business was not restricted at [that] point." *Id.* at 827, 839 P.2d at 1241.

To conclude, as Cox urges, that Officer Green's knock on Cox's window could not be ignored but instead required him to open his door would be inconsistent with the holdings in *Randle* and *Zubizareta* that a driver is free to ignore such a knock. Further, we decline to conclude that the officers in this case had an affirmative duty to close Cox's driver's door before

request." In *Irwin*, however, this Court was not addressing a dog sniff but rather whether an officer, who had reasonable suspicion to order a driver out of her vehicle, could open the vehicle's door. *Id.* at 105-06, 137 P.3d at 1027-28. The Court held that "there is no question the officers possessed reasonable suspicion to detain Irwin for traffic violations they had witnessed [and] were entitled to order her out of her vehicle" and that "given that officers have clear authority to order people out of vehicles during a roadside stop, it is constitutionally irrelevant whether the officer or the occupant opens the car door to enable the occupant to exit." *Id.* Although the officers in this case arguably had reasonable suspicion to order Cox out of his vehicle, that is not an issue the parties raised in this case. Thus, *Irwin* is inapplicable.

deploying Geno. Cox fails to cite any authority for the proposition that officers must close windows and doors which they did not open before conducting a drug sniff and other courts have declined to adopt such a rule. *See, e.g.*, *United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007) (ruling officers did not have affirmative duty to close windows opened by defendant in preparation for dog sniff and noting absence of contrary authority).

Finally, Cox challenges the district court's finding that "at no point did Geno actually get into the vehicle." In support, Cox argues that "while it is true Geno's paws always remained on the pavement," "Geno [put] his nose across the threshold of the car in order to sniff the floorboards." We reject Cox's challenge for two reasons. First, we agree with the State that the district court's finding simply meant that Geno did not actually physically enter into the vehicle's internal compartment; the finding did not mean Geno did not sniff the vehicle's interior. By finding Geno sniffed the driver's door pocket and floorboard, the district court acknowledged Geno sniffed the vehicle's interior. Second, under *Naranjo*, whether Geno actually physically got into the vehicle is not the proper inquiry. Rather, the appropriate inquiry is whether Geno's sniffs of the driver's door pocket and floorboard were instinctual and whether the officers facilitated Geno's sniffs. The district court found Geno's sniffs were instinctual. Cox does not dispute this finding, and as discussed above, his assertion that Officer Green facilitated the sniffs by knocking on Cox's window and not closing his door fails. Accordingly, we hold that Cox's Fourth Amendment rights were not violated.

**B.     Dog Sniff Did Not Violate Article I, § 17 of the Idaho Constitution**

As an alternative argument, Cox urges this Court to conclude that Article I, § 17 of the Idaho Constitution provides greater protection than the Fourth Amendment in the context of a dog sniff of a vehicle's interior. We are not required to follow federal Fourth Amendment precedent in interpreting Article I, § 17. *State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999). The Idaho Supreme Court, however, has observed that "there is merit in having the same rule of law applicable within the borders of our state, whether the interpretation of the Fourth Amendment or its counterpart--Article I, § 17 of the Idaho Constitution--is involved. Such consistency makes sense to the police and the public." *State v. Charpentier*, 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998).

Numerous criteria may impact whether the state Constitution should be interpreted independently from the federal Constitution. *State v. Wheaton*, 121 Idaho 404, 407, 825 P.2d

501, 504 (1992) (Bistline, J., concurring). These criteria include, for example, the state Constitution's textual language, any significant differences in the texts of parallel provisions of the federal and state Constitutions, the state constitutional and common law history, the preexisting state law, the differences in structure between the federal and state Constitutions, and matters of particular state interest or local concern. *Id.* at 407-08, 825 P.2d at 504-05 (citing *State v. Gunwall*, 720 P.2d 808, 812-13 (Wash. 1986)). Additionally, the Idaho Supreme Court has "provided greater protection to Idaho citizens based on the uniqueness of our state, our Constitution, and our long-standing jurisprudence." *State v. Donato*, 135 Idaho 469, 472, 20 P.3d 5, 8 (2001).

Cox failed to address any of these criteria or to offer any evidence of them in support of his motion to suppress. Indeed, he neither raised the issue nor provided any supporting legal authority for his assertion in his motion to suppress. Rather, he did not raise the issue until the conclusion of the evidentiary hearing on his motion to suppress during closing argument. At that time, Cox briefly stated that "the Idaho Constitution has stronger safeguards against this type of intrusion" and generally referred to *State v. Thompson* (without citation) for the proposition that Idaho "citizens more jealously guard privacy rights." *See Thompson*, 114 Idaho 746, 749, 760 P.2d 1162, 1165 (1988) (ruling "in Idaho there is a legitimate and reasonable expectation of privacy in the phone numbers that are dialed").

On appeal, Cox challenges the district court for failing to analyze his argument that Article I, § 17 provides greater protection than the Fourth Amendment in the context of dog sniffs of a vehicle's interior and argues "it was the district court, not [Cox] that failed to conduct the analysis." We disagree. Cox's brief oral statements, made for the first time during closing argument following the evidentiary hearing on his motion to suppress, did not comply with Rule 12(c) of the Idaho Criminal Rules and were inadequate to raise the issue. *See* I.C.R. 12(c) (requiring motion to suppress "describe the evidence sought to be suppressed and the legal basis for its suppression sufficiently to give the opposing party reasonable notice of the issues"). Appellate court review is limited to the evidence, theories, and arguments that were properly presented to the trial court. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). Because Cox failed to properly raise the issue in support of his motion to suppress, we cannot consider it on appeal. *Id.* at 276, 396 P.3d at 705.

Regardless, we reject Cox's argument on appeal that the Fourth Amendment federal law on which *Narajano* relies "appears to run contrary to several fundamental legal principles." Specifically, we reject Cox's argument that the federal analysis "turns on an evaluation of the officer's subjective intentions--if the officer did not intend for the dog to enter the car." To the contrary, the analysis turns on objective facts, namely whether the officer's conduct facilitated the drug dog's entry into the vehicle's interior. Moreover, Cox's assertion that Article I, § 17 provides greater protection than the Fourth Amendment is another implicit request that this Court overturn *Naranjo*, which has already adopted the Fourth Amendment analysis in the context of a drug dog's sniff of a vehicle's interior. Again, we decline to overrule *Naranjo.*

## IV.

## CONCLUSION

We hold that Geno's sniffs of the interior compartment of Cox's vehicle through the driver's door, which Cox voluntarily opened in response to Officer Green's knock on the window, did not violate Cox's rights under either the Fourth Amendment rights or Article I, § 17. Accordingly, we affirm the judgment of conviction and the denial of Cox's motion to suppress.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.