# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46893

STATE OF IDAHO,

  Plaintiff-Respondent,

v.

JACOB STEELE RANDALL,

  Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Opinion Filed: August 13, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge.

Judgment of conviction for trafficking in marijuana, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

  Jacob Steele Randall appeals from his judgment of conviction for trafficking in marijuana. Randall argues the district court erred in denying his motion to suppress because reasonable suspicion did not exist to expand the scope of the traffic stop to a drug investigation and the drug-detection dog's entry into the interior of his car constituted an unlawful search under the Fourth Amendment. Additionally, Randall alleges the district court abused its discretion by imposing an excessive sentence. Because reasonable suspicion existed to support a drug investigation, the dog's alert on the exterior of Randall's rental car provided probable cause to support a warrantless search, the dog's instinctive and unfacilitated jump and entry into the car did not constitute a search, and the sentence is not excessive, the judgment of conviction is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 3, while parked in an interstate median, Idaho State Police Trooper Scheierman observed a car traveling east at approximately eighty miles per hour near Pocatello. Although this speed was within the speed limit, the car slowed down upon approaching Scheierman's patrol car. As Scheierman watched the car pass, he noticed the driver sitting in a very rigid, uncomfortable, and unnatural driving position and pressing himself backwards in the seat. Scheierman believed this to be abnormal behavior and followed the car. After witnessing the driver fail to use his turn signal for the requisite five seconds before changing lanes, Scheierman activated his emergency lights and initiated a traffic stop.

Scheierman made contact with Randall, the driver, explained the basis for the stop, and asked for Randall's driver's license, proof of registration, and insurance. After Randall complied with these requests, Scheierman learned the car was a rental. Randall stated that because of low airline fares, he decided to fly to Las Vegas for a vacation. Randall said he purchased an airline ticket from Saint Paul, Minnesota, to Las Vegas, Nevada, for seventy-five dollars and arrived in Las Vegas late in the evening on August 30. Randall explained he rented a car to drive back to Saint Paul; the rental car paperwork indicated he rented the car on August 31. After renting the car, Randall told Scheierman that he drove west to Reno, Nevada, about a seven-hour drive from Las Vegas. During this conversation, Scheierman noticed Randall's hands were shaking, his carotid artery was pulsating, and the car had a lived-in look, with food wrappers, gallons of water, and toiletries scattered throughout the interior.

Scheierman asked Randall to step out of the car to speak with him by Scheierman's patrol car. Randall complied. While Scheierman checked for outstanding warrants, Scheierman and Randall continued to speak about Randall's travel destinations over the previous few days. When Scheierman checked Randall's driver's license, the law enforcement database did not indicate any outstanding warrants or anything else that required further action by law enforcement.

Nevertheless, Scheierman thought several of Randall's statements were suspicious. First, Randall only paid seventy-five dollars for airfare from Saint Paul to Las Vegas, but paid more than $500 to rent the car for the trip home. Second, Randall stated he wanted to vacation in Las Vegas, but then spent very little time there, instead spending the vast majority of his time driving

2

west to Reno before heading northeast towards Saint Paul. Third, Randall initially denied traveling anywhere but Las Vegas, but later admitted driving to Reno. Based upon Randall's unusual travel, which included known drug trafficking destinations, his level of nervousness, and the physical state of the interior of the rental car, Scheierman had concerns about Randall's possible involvement in drug trafficking and expressed these concerns to Randall. Randall denied any involvement in drug trafficking and, upon Scheierman's request, consented to Scheierman running his drug-detection dog, Bingo, around the car. Bingo approached the driver's side door of Randall's rental car, sniffed, and jumped through the open window, becoming stuck halfway inside the car and halfway outside the car. When Scheierman realized Bingo jumped into the car and became stuck, Scheierman assisted the dog further into the car to prevent injury to the animal and the car. Bingo entered the back seat of Randall's rental car, intensely sniffed, and alerted on the back seat, facing the trunk. Scheierman then walked Bingo around the exterior of the car and Bingo again alerted at the trunk. A subsequent search of the car's trunk revealed sixty-five pounds of marijuana. The State charged Randall with felony trafficking in marijuana.

Randall filed a motion to suppress all evidence obtained as a result of the stop of his rental car by law enforcement arguing, in part, that the initial purpose of the stop was unconstitutionally expanded to include a drug investigation even though Scheierman did not have reasonable suspicion of illegal drug activity and that Bingo's entry into the interior of the car was facilitated by Scheierman and, thus, constituted an illegal search. The district court found Scheierman had reasonable suspicion of drug activity, which justified the subsequent drug investigation, the use of a drug-detection dog, and the search of the car. Additionally, the district court found Bingo's sniff in the interior of Randall's rental car was not unconstitutional because Bingo independently entered Randall's rental car after detecting an odor emanating from the car. Accordingly, the district court denied Randall's motion to suppress.

Randall pled guilty to an amended charge of trafficking in marijuana of at least five pounds, but less than twenty-five pounds, Idaho Code § 37-2732B(a)(1)(B), but reserved the right to appeal the district court's denial of his motion to suppress. The district court sentenced Randall to a unified term of seven years, with three years determinate. Randall timely appeals.

3

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

## III.

## ANALYSIS

On appeal, Randall alleges the district court erred in denying his motion to suppress and abused its discretion in imposing a unified sentence of seven years, with three years determinate. In response, the State argues the district court did not err in its denial of Randall's motion to suppress or in imposing Randall's sentence.

4

**A.** **The District Court Did Not Err in Denying Randall's Motion to Suppress**

Randall alleges the district court erred in denying his motion to suppress because: (1) Scheierman did not have the reasonable, articulable suspicion necessary to expand the initial traffic stop to a drug investigation; and (2) Bingo's entry into the interior of Randall's rental car absent probable cause constituted an unlawful search. In response, the State argues the district court did not err because reasonable suspicion supported the expansion of the traffic stop and Bingo's entry into the vehicle did not justify the suppression of evidence.

**1.** **Reasonable suspicion existed to expand the scope of the traffic stop to a drug investigation**

Randall argues that Scheierman did not have the reasonable suspicion necessary to expand the initial traffic stop into a drug investigation because the district court's factual findings that Randall appeared nervous and shaking, disclosed suspicious and confusing travel plans, and changed his answer about whether he visited anywhere west of Las Vegas during his trip only supported a hunch, not reasonable suspicion, of drug activity.[1] In support of this conclusion, Randall relies on *State v. Kelley*, 160 Idaho 761, 379 P.3d 351 (Ct. App. 2016) to assert that a driver's nervousness and confusing travel plans during a traffic stop do not give rise to reasonable suspicion of drug activity. Further, Randall argues no other circumstances supported reasonable suspicion of drug activity because there was no smell of drugs or visible drug paraphernalia and Randall complied with Scheierman's requests. In response, the State argues that given the totality of the circumstances, Scheierman had reasonable suspicion that Randall was involved in criminal activity.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Generally, evidence obtained as a result of an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Typically, seizures must be based on probable cause to be reasonable. *Florida v. Royer*, 460 U.S. 491, 499-500 (1983).

An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the

---

[1] Randall does not challenge the legality of the initial stop of his vehicle for failure to adequately signal a lane change.

5

circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

When an individual exhibits characteristics that are common among the general public, these characteristics are "of limited significance in establishing the presence of reasonable suspicion." *State v. Neal*, 159 Idaho 919, 924, 367 P.3d 1231, 1236 (Ct. App. 2016). For example, it is common for people to exhibit signs of nervousness, like shaky hands or a pulsating artery, when confronted with a law enforcement officer, regardless of their involvement, or lack thereof, in criminal activity. *Id.* Similarly, an individual driving on an interstate which law enforcement recognizes as a "drug-trafficking corridor" may not, by itself, create reasonable suspicion that the individual is involved in drug activity because "it would subject thousands of innocent travelers to an invasion of their privacy for no more of a reason than the use of the road." *Kelley*, 160 Idaho at 763, 379 P.3d at 353. However, because reasonable suspicion is evaluated under the totality of the circumstances, "otherwise innocent acts, when considered together, can be sufficiently suspicious so as to justify an investigative detention," even if those circumstances by themselves may not give rise to reasonable suspicion of criminal activity. *Id.* at 764, 379 P.3d at 354.

In *Kelley*, this Court addressed whether a law enforcement officer had sufficient reasonable suspicion of criminal activity to support an extension of a traffic stop when he was confronted with a driver who exhibited multiple signs of nervousness during a traffic stop, had an unusual travel itinerary, and was traveling on an interstate that was known as a drug-

6

trafficking corridor. *Id.* at 763, 379 P.3d at 353. While questioning Kelley for speeding, the officer noticed Kelley displayed nervous behavior, including avoiding eye contact, trembling, and having a pulsating carotid artery. *Id.* at 762, 379 P.3d at 352. The officer requested assistance from another unit and while waiting for dispatch, the officer questioned Kelley about his travel plans. *Id.* Kelley informed the officer that the car belonged to his friend and Kelley was driving from Oregon to Nebraska to return it to him. *Id.* A drug-detection dog was deployed around the car and the dog alerted. A subsequent search yielded more than twenty-two pounds of marijuana in the car's trunk. *Id.* Kelley moved to suppress the evidence found during the search, arguing that the officer did not have reasonable suspicion to prolong the traffic stop. *Id.*

This Court held the totality of the circumstances did not justify the officer's reasonable suspicion that Kelley was involved in criminal activity because no objective facts connected his otherwise normal behavior (traveling down an interstate and becoming nervous when stopped by a law enforcement officer) or unusual travel plans to criminal activity. *Id.* at 764, 379 P.3d at 354. Without facts linking Kelly's behavior to criminal activity, the officer's suspicion that Kelley was involved in drug activity was nothing more than a hunch. *Id.*

Here, unlike *Kelley*, Scheierman was not just confronted with facts that were true of the general public, like nervousness or travelling on a heavily used interstate, but also with facts that linked Randall's behavior to criminal activity. Scheierman testified that Randall's nervousness increased when the officer asked specific questions about Randall's travel plans. Randall told Scheierman that he had purchased a seventy-five dollar airplane ticket to Las Vegas because of the low price. When Scheierman asked Randall if he had been anywhere besides Las Vegas, Randall paused, and initially indicated he had not. When asked if he was sure, Randall paused and then admitted he had driven to Reno, Nevada. Scheierman thought these explanations were suspicious because: (1) instead of taking advantage of the low price for a return flight, Randall spent more than $500 to drive back to St. Paul, negating any of the benefits of the affordability of the original airfare, one of the reasons Randall said he purchased the ticket; (2) by driving back to Saint Paul, Randall's travel itinerary included far more driving time than it did vacation time in Las Vegas; (3) driving west to Reno, instead of northeast towards St. Paul, was inconsistent with a vacation from St. Paul to Las Vegas; (4) the travel itinerary was inconsistent with what average travelers would do, but was consistent with the type of itinerary drug traffickers use;

7

(5) Scheierman knew that Reno and St. Paul were source and destination cities for drug traffickers; (6) Randall's nervousness increased when asked about his travel plans; and (7) the lived-in look of the car.

Randall's answers to questions that arose during the traffic stop, and the reasonable inferences therefrom, provided Scheierman more information than was available to the officer in *Kelley* and provided reasonable suspicion that Randall's specific behavior was linked to criminal activity. By the time the warrants check indicated that Randall had no warrants, the above facts, in light of the totality of the circumstances, gave Scheierman reasonable suspicion that Randall was involved in illegal activity and, thus, Scheierman had reasonable suspicion to continue the investigation of drug activity.

Based on the totality of the circumstances, Scheierman had reasonable suspicion to expand the scope of the stop beyond the initial traffic violation to encompass a drug investigation. As such, the district court correctly determined there was no constitutionally unreasonable expansion of the traffic stop to investigate potential drug activity.

2.      **Bingo's alert on the exterior of Randall's rental car gave rise to probable cause to support a warrantless search**

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

Pursuant to the automobile exception, a warrantless search of a vehicle is authorized when there is probable cause to believe the vehicle contains contraband or evidence of criminal activity. *United States v. Ross*, 456 U.S. 798, 824 (1982); *State v. Smith*, 152 Idaho 115, 120, 266 P.3d 1220, 1225 (Ct. App. 2011). When a reliable drug dog indicates that a lawfully stopped automobile contains the odor of controlled substances, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant. *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999); *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005). A reliable drug dog's indication on the exterior of a vehicle is not a search for Fourth Amendment purposes. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *see also State v. Aguirre*, 141 Idaho 560, 563, 112 P.3d 848, 851 (Ct. App. 2005).

8

It is uncontested that Randall consented to Scheierman running a drug-detection dog around the exterior of Randall's rental car and Bingo alerted to the presence of drugs on both the interior and the exterior of the car. The State argues that the alert on the exterior of the car was sufficient to provide probable cause for a search of the car such that we need not address Randall's complaints regarding Bingo's entry into the car. Randall argues the State has not preserved the argument that Bingo's exterior alert justified the subsequent search of Randall's rental car because the State did not raise such an argument below.

Although whether the exterior sniff was sufficient for probable cause was not addressed by the district court this does not preclude this Court's review of the issue because whether a search was constitutional is a question of law, which we freely review if the issue has been preserved. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996); *see also State v. Islas*, 165 Idaho 260, 269, 443 P.3d 274, 283 (Ct. App. 2019) (noting the "de novo standard of review is a free review of legal arguments preserved for appeal").

Following the suppression hearing, the parties submitted written closing arguments. In the State's brief, the State responded to Randall's allegations that the evidence should be suppressed because of the asserted illegality of Bingo's entry into Randall's rental car. The State argued that Bingo's entry into and sniff of the interior of Randall's rental car did not constitute a warrantless search. The State also asserted:

> After this initial drug indication, Trooper Scheierman did remove Bingo from the inside of the vehicle and had him continue with the sniff of the vehicle around the outside of the vehicle. Bingo again indicated near the backside of the vehicle near the trunk. As testified to by Trooper Scheierman, Bingo indicated both on the inside and the outside of Defendant Randall's vehicle.
>     On these circumstances, it can be found that the K-9 sniff was not an illegal search of the vehicle and any and all evidence obtained from the sniff should not be suppressed.

Thus, in the district court, the State referenced both the exterior dog sniff and that any evidence obtained as a result of the sniff should not be suppressed, sufficiently preserving the issue for this Court's review. *See State v. Bodenbach*, 165 Idaho 577, 584, 448 P.3d 1005, 1012 (2019) (party may polish argument made at district court as long as party puts forth same legal issue and position on issue).

We have already concluded Scheierman had reasonable suspicion to expand the scope of the traffic stop into a drug investigation. Scheierman also had Randall's consent to use a drug-detection dog to sniff the exterior of Randall's rental car. Bingo's alert on the exterior of

9

the car provided probable cause that there were drugs in the automobile. Thus, the subsequent warrantless search of Randall's rental car was justified by Bingo's exterior alert, and the district court did not err by denying Randall's motion to suppress.

### 3. Bingo's entry into Randall's rental car did not constitute a search

Even if the State had not preserved the argument that Bingo's alert on the exterior of Randall's rental car independently justified the subsequent warrantless search, the district court did not err in denying Randall's motion to suppress based on Bingo's alert on the car's interior.

Randall alleges the district court erred in denying his motion to suppress because Bingo's entry into the car constituted an unlawful search. Specifically, Randall argues the district court's finding that Bingo smelled narcotics and instinctively tried to jump through the window is not supported by substantial and competent evidence. Additionally, Randall contends that because Bingo did not obtain entry into Randall's rental car without assistance from Scheierman, the entry constituted an unlawful search.[2] In response, the State argues that the district court correctly determined that Bingo's entry into Randall's rental car did not justify the suppression of evidence because the entry did not constitute a search under the Fourth Amendment.

When a drug dog follows a scent into a vehicle's interior, it is not a search under the Fourth Amendment if the dog's actions were instinctual and not encouraged or facilitated by the police. *State v. Naranjo*, 159 Idaho 258, 260, 359 P.3d 1055, 1057 (Ct. App. 2015). A dog's entry into a vehicle is instinctive when the entry occurs without assistance, facilitation, or other intentional action by the dog's handler. *State v. Cox*, 166 Idaho 894, 899, 465 P.3d 1133, 1138 (Ct. App. 2020). This analysis does not turn on whether the officer intended for the dog to enter the vehicle; instead it turns on objective facts. *Id.* at 901, 465 P.3d at 1140. Because the inquiry is whether the dog's actions were instinctual and whether the officer encouraged or facilitated the actions, the analysis does not depend on how much of the dog enters the vehicle; it applies

---

[2]     Randall also argues that if a drug-detection dog enters a vehicle for any reason, including instinct, prior to the establishment of probable cause, United States Supreme Court precedent indicates that is an unconstitutional search. In support of this proposition, Randall cites *Florida v. Jardines*, 569 U.S. 1 (2013) and *United States v. Jones*, 565 U.S. 400 (2012). However, neither of these cases involved the use of a drug-detection dog on a vehicle. Additionally, Randall's proposed analysis is inconsistent with the constitutional analysis articulated previously by this Court in *State v. Naranjo*, 159 Idaho 258, 260, 359 P.3d 1055, 1057 (Ct. App. 2015), which focuses on whether the dog sniff was instinctual and not facilitated by an officer. By proposing a different analysis than the one adopted by this Court in *Naranjo*, Randall implicitly urges this Court to overturn *Naranjo*, which we decline to do.

10

whether the dog places its nose in an open window, *Naranjo*, 159 Idaho at 260, 359 P.3d at 1057, an open door, or actually enters the vehicle. *See Cox*, 166 Idaho at 899, 465 P.3d at 1138. Because our previous cases have concerned a dog's sniff of a vehicle's interior through an open window or door, but not a dog's physical entry into the interior compartment of a vehicle, we have only considered whether the dog's sniff into the vehicle's interior was instinctual. However, other courts that have addressed situations where a dog physically entered a vehicle by jumping through an open door or window have focused on whether the dog's entry into the vehicle was instinctual and concluded that, as with sniffs of the interior, if the entry is instinctual and not facilitated or encouraged by law enforcement there is no Fourth Amendment violation. *See United States v. Sharp*, 689 F.3d 616, 620 (6th Cir. 2012) ("We now join our sister circuits in holding that a trained canine's sniff inside of a car after instinctively jumping into the car is not a search that violates the Fourth Amendment as long as the police did not encourage or facilitate the dog's jump.").

Here, nothing in the record indicates that Bingo's jump or initial entry into or subsequent sniff of the interior of Randall's rental car was facilitated or encouraged by Scheierman. The district court found:

> Based upon the testimony and the evidence presented, Trooper Scheierman's drug dog made independent entry into the Defendant's car because the dog detected an odor emanating from the vehicle. While Trooper Scheierman testified that he did assist the dog's entry into the vehicle, that assistance was only given to prevent injury to the animal and car and came only after the dog had independently placed its paws on the open front driver's side window and jumped inside.

These findings are supported by substantial and competent evidence. Scheierman testified that Bingo was a single-purpose drug dog, trained to detect marijuana, methamphetamine, cocaine, and heroin. Scheierman testified that upon letting Bingo out of the patrol vehicle, Bingo lead Scheierman directly to the front door of Randall's rental car. Although Scheierman testified that he was supposed to walk Bingo to the car, instead Bingo "walked me." Scheierman continued, Bingo "put his front paw up onto the front driver's side window, which was open, and I noticed Bingo paused briefly as he was sniffing, and then propelled himself inside of that open window." Scheierman testified that Bingo jumped inside of the car, but became stuck on the window area when he was "halfway in" and so Scheierman assisted Bingo to prevent injury to the dog or car. Scheierman testified, "[s]o I didn't boost him.

11

I didn't pick him up. He was already going in." Once inside, Bingo went to the car's backseat where he began an "intense, closed mouth, sniffing pattern on the backseat," which included sticking his nose where the backrest and the seat meet, and gave his final indication, alerting Scheierman that Bingo smelled the presence of drugs.

Randall asserts that law enforcement officers could train drug-detection dogs to jump through open car windows whenever possible; therefore, there is insufficient evidence to conclude that Bingo jumped through the window to follow a scent as opposed to following his training to jump through windows. However, no evidence in the record suggests Bingo was following training to jump through an open window as opposed to tracking a scent to its source. Further, there is no evidence in the record that Scheierman cued, instructed, or did anything to encourage Bingo to initiate the jump or ultimate entry into Randall's rental car. Instead, the record indicates that Bingo went immediately to the driver-side door, paused and sniffed the open window, and attempted to jump into the car's interior. The undisputed evidence indicates that Bingo instinctually jumped halfway into the car before getting stuck and before Scheierman provided any assistance. Once inside, Bingo went to the car's backseat where he began intense sniffing and alerted. Taken together, the evidence of Bingo's training and behavior supports the district court's conclusion that Bingo smelled drugs while outside the car and jumped through the open window to follow the scent to its source.

Therefore, there is substantial and competent evidence to support the district court's finding that Bingo was following the scent of drugs and his subsequent jump and entry into Randall's rental car were instinctual. Because Bingo was acting on instinct and the jump and entry were not facilitated by law enforcement, Bingo's entry and sniff of the interior of Randall's rental car were not a search under the Fourth Amendment, and the district court did not err in denying Randall's motion to suppress.

**B.      The District Court Did Not Abuse Its Discretion by Imposing an Excessive Sentence**

Randall asserts that while his sentence of seven years, with three years determinate, is within the statutory limits, given any view of the facts of his case, the sentence is excessive. Randall alleges the district court abused its discretion in imposing the sentence, considering that he expressed remorse, accepted responsibility, and has a supportive family to assist in his rehabilitation. In response, the State contends that the district court did not abuse its discretion.

12

Idaho Code § 37-2732B(a)(1)(B) provides that an individual guilty of trafficking in marijuana of five pounds or more, but less that twenty-five pounds, "shall be sentenced to a mandatory minimum fixed term of imprisonment of three (3) years." A mandatory minimum sentence is not subject to reduction by a district court because mandatory minimums are determinate sentences that an individual must serve in confinement. *State v. Hansen*, 138 Idaho 791, 797, 69 P.3d 1052, 1058 (2003); *State v. Ephraim*, 152 Idaho 176, 179, 267 P.3d 1291, 1294 (Ct. App. 2011). Although an individual may challenge the indeterminate portions of a sentence, a district court does not err by imposing an indeterminate sentence to provide motivation to ensure rehabilitation and good behavior while incarcerated. *See State v. Wright*, 134 Idaho 79, 84, 996 P.2d 298, 303 (2000).

Randall pled guilty to trafficking in marijuana of at least five pounds, but less than twenty-five pounds, I.C. § 37-2732B(a)(1)(B). The determinate portion of Randall's sentence reflects the mandatory minimum and, thus, the district court had no discretion to impose less than the statutorily mandated determinate sentence.

Randall's presentence investigation report (PSI) placed him in the moderate-risk range for recidivism, described Randall's daily use of marijuana, and concluded that based on the assessed need, risk, and other protective factors, Randall would benefit from participation in rehabilitative programs and pro-social activities during incarceration and may obtain skills and insight through incarceration to live crime-free upon release.

The district court found that after reviewing Randall's PSI and the facts and circumstances of the particular case, a four-year indeterminate sentence was appropriate. The district court stated that it would:

> impose a mandatory minimum of three years, and that will be followed by an indeterminate period of time of four years, which simply means that you have to serve the three years before you're eligible for parole, whether you parole when you're finished with that three years depends on how you do in the prison setting and whether or not you have to serve beyond that amount of time, so that's what the indeterminate time is for. It's not that you have to serve that indeterminate time, but it will be ultimately up to the Department of Corrections and the Parole Commission with regard to the parole date.

While Randall acknowledged remorse and accepted responsibility for his actions at the sentencing hearing, we cannot say that under any view of the facts the district court's additional indeterminate sentence of four years was unreasonable. Accordingly, we cannot find that the district court abused its discretion.

## IV.

## CONCLUSION

The district court did not err in denying Randall's motion to suppress because reasonable suspicion existed to expand the scope of the traffic stop to encompass a drug investigation, Bingo's alert on the exterior of Randall's rental car provided probable cause to support a warrantless search, and Bingo's instinctual and unfacilitated jump and entry into Randall's rental car did not constitute a search under the Fourth Amendment. Additionally, the district court did not abuse its discretion in its sentencing determination because we cannot say that under any view of the facts the district court's sentence was unreasonable. Randall's judgment of conviction and sentence are affirmed.

Judge GRATTON and Judge LORELLO **CONCUR**.