**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47062**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Opinion Filed: September 8, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| DONALD J. JAY, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Nancy A. Baskin, District Judge. Hon. Theodore J. Fleming, Magistrate Judge.

Order of the district court, on intermediate appeal, from the magistrate court's judgment of conviction for providing false information to a law enforcement officer and driving without privileges, affirmed.

Terry S. Ratliff, Elmore County Public Defender; Shawn Wilkerson, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Donald J. Jay appeals from the district court's intermediate appellate decision, affirming his judgment of conviction for providing false information to a law enforcement officer and driving without privileges. Specifically, Jay challenges the denial of his motion to suppress. Because the magistrate court's findings were supported by substantial and competent evidence, the district court's order is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Idaho State Police Trooper Rodean was on duty and traveling westbound on Interstate 84 (I-84). While driving near mile marker 98, he observed an SUV parked on the right shoulder of

1

I-84, half-way on the paved portion of the shoulder and half-way on the gravel. Rodean pulled in and parked behind the vehicle. He did not turn on his overhead lights and only activated his rear lights so oncoming traffic would be alerted to the two cars on the right shoulder of the interstate. Rodean walked up to the driver's side door where he observed Jay in the driver's seat, slumped back, and apparently sleeping. The SUV's engine was off, and the hazard lights were not flashing. Rodean knocked on the window and did not receive a response. He knocked again, did not receive an immediate response, waited approximately three to five seconds, and then opened the driver's side door. The noise from the traffic and from the opening door made Jay "come to," but he was initially incoherent. Rodean explained that he was checking on Jay and informed Jay that he could not be parked on the interstate. Jay did not respond. Rodean asked to see Jay's driver's license and identification.

In the course of the conversation, Jay said he did not have a driver's license, did not have any identification with him, his name was "Darren Jacobson," and his date of birth was January 7, 1978. Rodean went back to his patrol vehicle and entered the information into the law enforcement database; the information returned as "non-found" which means "there is no record on file of this person existing in Idaho or essentially nationwide. That it would essentially be a false name if there is no record found." Because of the "non-found" status of the information Jay provided, Rodean called for assistance from additional officers. Rodean returned to ask Jay about the information he provided, and Jay clarified the spelling of his name. When this information was entered into the database, it again came back as "no-return/non-found."

The second time Rodean was entering the information into his database, he saw Jay leaning into the passenger side of the SUV, so Rodean returned to Jay's SUV. Rodean informed Jay that he was being detained until he could be identified, asked him to step out of the SUV, handcuffed him, and placed him in the back of his patrol vehicle. Rodean then entered the SUV information into the law enforcement database, and the owner of the vehicle was not named "Darren." As a result, Rodean began investigating whether or not the SUV had been reported as stolen. When asked, Jay said the vehicle belonged to a friend (his cousin), who had let him borrow it.

Ultimately, Rodean told Jay he was under arrest for driving without privileges and advised him of his *Miranda*[1] rights. Rodean searched Jay incident to his arrest and found Jay's wallet in his pants pocket. Jay's wallet contained Jay's Idaho identification card with Jay's correct name and date of birth. After running the correct information, Rodean learned there was an outstanding felony arrest warrant for Jay. Because the SUV was going to be towed, Rodean inventoried the contents of the vehicle, during which he found drug paraphernalia.

The State charged Jay with providing false information to a law enforcement officer, Idaho Code § 18-5413(2), driving without privileges, I.C. § 18-8001(3), and possession of drug paraphernalia, I.C. § 37-2734A(1). Jay filed a motion to suppress all the evidence obtained after Rodean opened Jay's car door on the basis that he was detained without reasonable suspicion and his vehicle was searched without probable cause. After a hearing, the magistrate court denied Jay's motion to suppress. Jay entered a conditional guilty plea to providing false information to law enforcement and driving without privileges. In exchange, the State agreed to dismiss the paraphernalia charge. The magistrate court entered a judgment of conviction pursuant to Jay's conditional guilty plea, and Jay timely appealed the decision to the district court. The district court affirmed the magistrate court's denial of Jay's motion to suppress. Jay timely appeals.

## II.

### STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Jay argues the district court erred when it affirmed the magistrate court's order denying Jay's motion to suppress. Specifically, Jay contends Rodean violated Jay's federal and state Fourth Amendment protections when Rodean opened the SUV's door because there was no reasonable suspicion of any crime or any misdemeanor committed in Rodean's presence. Consequently, any evidence obtained after Rodean opened the door must be suppressed. In response, the State asserts it was not violative of any constitutional provision for Rodean to open the door of Jay's SUV based on Rodean's belief that Jay had committed a traffic offense by illegally parking on the interstate. Alternatively, the State argues Rodean was legitimately executing his community caretaker function when he opened Jay's car door and, thus, there is no basis on which to suppress the evidence. Finally, the State asserts that because Jay never challenged the circumstances of his arrest in either the magistrate court or the district court, he cannot raise the issue for the first time on appeal.

The Fourth Amendment to the United States Constitution[2] prohibits unreasonable searches and seizures. Generally, evidence obtained as a result of an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Typically, seizures must be based on probable cause to be reasonable. *Florida v. Royer*, 460 U.S. 491, 499-500 (1983). A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

---

[2]    Jay asserts that "the exclusionary rule under Idaho Constitution is broader than its federal counterpart and should preclude the State from making after the fact justifications for law enforcement actions." However, Jay presents no authority or cogent argument for applying a broader Idaho exclusionary rule, let alone any exclusionary rule, to prohibit "after the fact justifications" by law enforcement. Consequently, this case will be analyzed as a federal constitutional claim.

4

Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

**A.      Trooper Rodean Had Reasonable Suspicion That Jay Was Illegally Parked on I-84**

While both parties cite to *State v. Irwin*, 143 Idaho 102, 137 P.3d 1024 (Ct. App. 2006), they disagree about its applicability. Jay argues that the holding of *Irwin* is inapplicable because there is not substantial and competent evidence supporting the magistrate court's conclusion that Jay had committed a traffic violation by parking along the interstate in violation of I.C. § 49-660(1)(a)(9). Second, Jay argues that Rodean's actions should not be protected because the State subsequently provided a legal justification for actions which were not legally justified based on the Rodean's initial basis to seize and/or search Jay. The State argues there was substantial and competent evidence to support the magistrate court's factual finding, and consequently, the district court correctly deferred to this finding.

In *Irwin*, this Court considered whether it was an illegal search for an officer to open a defendant's car door without first ordering the defendant out of the vehicle and giving her the opportunity to come out on her own volition. *Irwin*, 143 Idaho at 105, 137 P.3d at 1027. There, officers observed a vehicle traveling after dark with its headlights off and the passenger door open. *Id.* at 103, 137 P.3d at 1025. Shortly thereafter, officers pursued the vehicle and discovered it lawfully parked on the shoulder of the road, with its engine and lights off, and the windows and doors closed. *Id.* The officers approached the vehicle and saw Irwin curled up on the floor behind the front seats. *Id.* One officer opened the passenger door and ordered Irwin out of the vehicle. *Id.*

Irwin was charged with driving under the influence, and she moved to suppress all evidence obtained after the officer opened the door of Irwin's vehicle. *Id.* at 104, 137 P.3d at

5

1026. This Court found the officer's opening of the door did not constitute an illegal search. *Id.* at 104-06, 137 P.3d at 1026-28. This Court explained there was no question the officers had reasonable suspicion to detain Irwin for the traffic violations they witnessed, which included driving without headlights after dark and driving with an open door. *Id.* at 105, 137 P.3d at 1027. The officers were thus entitled to order Irwin out of her vehicle. *Id.* The question on appeal was whether the officers violated the Fourth Amendment by opening the door before giving Irwin a command to exit her vehicle. *Id.* Relying on precedent from other jurisdictions, this Court concluded:

> Given that officers have clear authority to order people out of vehicles during a roadside stop, it is constitutionally irrelevant whether the officer or the occupant opens the car door to enable the occupant to exit. Accordingly, the district court erred in holding that the officer's act of opening the door of Irwin's vehicle was an unconstitutional search.

*Id.* at 106, 137 P.3d at 1028. Thus, an officer has the constitutional authority to order an individual out of a car during a traffic stop, and it is irrelevant whether it is the officer or the individual who opens the car door to permit the individual to get out of the car. *Id.* Because Rodean was investigating, in part, an underlying traffic violation, the holding of *Irwin* is dispositive in this case

Although Jay argues there had to be evidence presented on each of the elements of the statute in order for the magistrate court to conclude Rodean had reasonable suspicion that Jay was violating I.C. § 49-660(1)(a)(9), we disagree. At the suppression hearing, Rodean testified that he was traveling westbound on 1-84 in Elmore County, Idaho. Near mile marker 98, he observed a white SUV Chevrolet parked on the right-side shoulder of the freeway. Rodean testified that it was his understanding that Idaho law prohibits parking on the interstate. He further testified that when he pulled in behind the SUV, he was investigating both the status of the individual in the SUV and the SUV illegally parked on the interstate. According to the testimony, when Rodean opened the door of the SUV, one of the first things he told Jay was that Jay could not be parked on the interstate. Rodean clarified:

> It is just unusual for someone to be parked on the interstate, especially with no hazards on. The engine was off. But it was just, kind of, the letting him know, you know, the initial reason why I am stopping now with the vehicle is because it is parked on the interstate.

In its opposition to the motion to suppress, the State argued:

6

I think the State's objection sets forth the statute that is referred to by the trooper which prohibits the parking. I think that changes the complexion somewhat admittedly from the motion and memorandum that was initially filed. So the State believes that the memorandum sets forth the proper basis that in any event, regardless of everything else, it is subject to inevitable discovery.

On appeal both to the district court and to this Court, Jay argues the State did not produce any evidence that Jay was in violation of I.C. § 49-660 because there was no evidence presented that I-84 was a controlled access highway. Thus, there was insufficient evidence on which the magistrate court could conclude Rodean was investigating a possible violation of I.C. § 49-660. Jay argues that, "In order for a court to rule a section of roadway is a controlled access highway there must be facts in the record on which a court can rely to find that the occupants of the abutting lands and other person have no legal right of access."[3]

We disagree that is the only evidence that would justify the magistrate court's factual conclusion that I-84 is a controlled access highway but, more importantly, it misstates the issue. The applicable standard is whether Rodean had a reasonable and articulable suspicion that there was possible criminal activity. That standard was met. It is undisputed that the stop occurred on I-84 and that Rodean believed Jay's parked vehicle on the shoulder of I-84 was statutorily prohibited. Idaho Code § 49-660(1)(a)(9) provides in relevant part: "Except when necessary to avoid conflict with other traffic, in compliance with law, the directions of a peace officer or traffic control device, no person shall [s]top, stand or park a vehicle . . . [o]n any controlled-access highway."

Rodean testified that when he saw the SUV on the side of the road, he was concerned about two things: the driver's welfare and the fact that the SUV was illegally parked on the interstate. Rodean's testimony--that he believed it was illegal for the SUV to be parked on the highway--went unchallenged, both as to whether parking on the side of the interstate violated a statutory provision and whether Rodean's belief was reasonable. Rodean's testimony is sufficient to provide substantial and competent evidence that Rodean was investigating what he reasonably believed to be Jay's violation of a statute that prohibited parking on the interstate.

---

[3] Although Jay cites *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986) and *Wylie v. State, Idaho Transp. Bd.*, 151 Idaho 26, 253 P.3d 700 (2011) for the proposition that whether a road is a controlled access road is an "issue of fact and law that requires extensive actual findings," this Court disagrees that either of those cases stand for that proposition.

Thus, like in *Irwin*, Rodean had reasonable suspicion to detain Jay for the traffic violation Rodean witnessed. During a lawful traffic stop, an officer may instruct the driver to exit the vehicle or to remain inside, and this procedure is within the police officer's discretion and is not otherwise unlawful. *State v. Parkinson*, 135 Idaho 357, 363, 17 P.3d 301, 307 (Ct. App. 2000). Because Rodean had the right to detain Jay, Rodean could also order Jay out of the SUV, and it is irrelevant whether Rodean or Jay opened the SUV door. Because opening the door of the SUV did not violate the Fourth Amendment, there is no basis to suppress any of the evidence obtained as a result of the search of the SUV. Consequently, the district court properly deferred to the magistrate court's factual findings and affirmed the magistrate court's denial of Jay's motion to suppress.

Jay also argues that, "Trooper Rodean's actions should not be protected because the State subsequently provided a legal justification for actions which were not legally justified based on the Trooper Rodean's initial basis to search and/or seize Mr. Jay." The argument appears to be that because Jay was not cited for illegally parking on the interstate, the State could not use this otherwise legal basis to retrospectively justify the contact between Jay and Rodean. Rodean was investigating both the illegal parking and Jay's welfare, individually and simultaneously, at the time Rodean pulled in behind Jay's SUV. Consequently, the traffic violation investigation is not a subsequent legal justification, but rather, one of the initial bases for the stop. As such, Rodean's investigation into the possible traffic violation was supported, at a minimum, by reasonable suspicion, and the district court correctly affirmed the magistrate court's finding that the seizure was reasonable. Because the traffic stop was reasonable, opening Jay's car door did not constitute an unlawful search, and thus, there was no basis on which to suppress the evidence. Accordingly, the district court correctly affirmed the magistrate court's denial of Jay's motion to suppress.

**B. Trooper Rodean Was Properly Exercising His Community Caretaker Function When He Opened Jay's Car Door**

Jay's second argument on appeal is that Rodean was not properly exercising his community caretaker function because Rodean should have waited for Jay to open the SUV door. Additionally, Jay argues that because the magistrate court did not address the community caretaker exception to the warrant requirement, the district court should not have addressed that exception to the warrant requirement.

The district court, sitting in its appellate capacity, freely reviews the application of constitutional principles to the established facts. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

8

A de novo standard of review permits an appellate court to review all legal issues raised in the lower court, even if one of the issues was not addressed in the first instance, so long as there is a sufficient factual basis. *See State v. Islas*, 165 Idaho 260, 271, 443 P.3d 274, 285 (Ct. App. 2019) (reasoning that Idaho jurisprudence suggests "that the de novo standard of 'right result-wrong theory' applies when multiple arguments have been presented to the district court and the district court decides the issue on one argument without deciding the other, alternative argument(s)").

Jay does not dispute the adequacy of the factual record, which indicates the facts supporting the community caretaker function were established at the suppression hearing in the magistrate court and argued by the State as an alternate basis for the interaction between Rodean and Jay. Because a sufficient factual basis existed, the issue--the applicability of the community caretaker as an exception to the warrant requirement--was preserved for review by the district court, sitting in its appellate capacity. Thus, the district court did not err in addressing whether Rodean was appropriately exercising his community caretaker function.

An officer may detain an individual when the officer is acting pursuant to the community caretaker function. *State v. Cutler*, 143 Idaho 297, 302, 141 P.3d 1166, 1171 (Ct. App. 2006). The community caretaker function arises from the duty of police officers to help citizens in need of assistance and is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *Id.*; *State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct. App. 2002). In analyzing community caretaker function cases, Idaho courts have adopted a totality of the circumstances test. *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997); *State v. Schmidt*, 137 Idaho 301, 303, 47 P.3d 1271, 1273 (Ct. App. 2002). The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances. *Wixom*, 130 Idaho at 754, 947 P.2d at 1002; *Schmidt*, 137 Idaho at 303-04, 47 P.3d at 1273-74. Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (1992); *Schmidt*, 137 Idaho at 304, 47 P.3d at 1274.

Here, Jay's vehicle was parked on the shoulder of the interstate. Jay was slumped over in the vehicle with his eyes shut. Jay did not respond after Rodean twice knocked on the window. After knocking the second time, waiting three to five seconds, and seeing no movement or

response, Rodean opened the vehicle door. The sound of the door opening, combined with the traffic noise from I-84, awakened Jay, who was incoherent. In light of the circumstances, Rodean reasonably executed his community caretaker function by opening the door to assess Jay's status and ensure that Jay was not suffering from any physical or mental health issues which would require medical attention. Consequently, there was no Fourth Amendment violation when Rodean opened the door of the SUV and no basis on which to suppress the evidence. Thus, the district court properly affirmed the magistrate court's denial of Jay's motion to suppress on this ground.

## C. *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019) Is Inapplicable to Jay's Case

Jay also contends the evidence in this case was inadmissible because it was obtained following a misdemeanor offense that was not committed in the presence of the officer. For support, Jay relies on the Idaho Supreme Court case, *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019).[4] However, Jay never challenged his arrest in the magistrate court or the district court. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, even if not raised below, claims of fundamental error may be raised for the first time on appeal. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). Jay has not raised a claim of fundamental error; therefore, we decline to address the applicability of *Clarke*.

## IV.

## CONCLUSION

The district court properly deferred to the magistrate court's factual findings, which were supported by substantial and competent evidence. The district court found the trooper had

---

[4] In *Clarke*, a woman contacted an officer and explained she was harassed and groped by Clarke. *State v. Clarke*, 165 Idaho 393, 394, 446 P.3d 451, 452 (2019). The woman informed the officer that Clarke made unwanted sexual advances and sent a harassing text message, and the woman provided a description of Clarke. *Id.* at 394-95, 446 P.3d at 452-53. Shortly thereafter, the officer located Clarke and Clarke admitted talking to and touching the woman, but claimed the touching was consensual. *Id.* at 395, 446 P.3d at 453. Based upon the complaint and Clarke's admission, the officer arrested Clarke and discovered drugs and paraphernalia during the search incident to the arrest. *Id.*

After reviewing principles of statutory interpretation and relevant legislative history, the Idaho Supreme Court held an officer violates Article I, Section 17 of the Idaho Constitution by making a warrantless arrest for a completed misdemeanor offense that occurred outside his presence even if probable cause exists. *Id.* at 399, 446 P.3d at 457.

reasonable suspicion to investigate the traffic violation and properly executed his community caretaker function. Consequently, both Jay's seizure and the subsequent search of his vehicle did not violate the Fourth Amendment. The district court's order affirming the magistrate court's denial of Jay's motion to suppress is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**